Parsons, C. J.
[After reciting the pleadings.] We are to decide whether the bar is, or is not, a sufficient answer to the conusance.
At common law, the tenant of a close was not obliged to fence' against an adjoining close, unless by force of prescription ; but he was, at his peril, to keep his cattle on his own close, and to prevent them from escaping. And if they escaped, they might be taken, on whatever land they were found damage feasant; or the owner was liable to an action of trespass by the party injured. And where there was no prescription, but the tenant had made an agreement to fence, yet he could not be compelled to fence, and the party injured by the breach of the agreement had no remedy, but by an action on the agreement. (6) In the case of a prescription to fence, he could be obliged to fence by the writ of curia claudendá, sued by the tenant of the adjoining close, who might also recover damages by that writ. (7)
When our ancestors first settled in this country, they found it uncultivated; and when closes were made by the settle [ * 95 ] ment and cultivation of the lands, there could be no * prescription to fence; and therefore the common law author izing the writ of curia claudendá, being inapplicable to the state of the colony, was never introduced. Provision respecting fences was early made by the legislature of the colony of Massachusetts Bay, which expired with the repeal of the first charter. After- *79 wards the obligations to fence were regulated and enforced by laws passed by the legislature of the province of Massachusetts Bay. These laws continued in force until their revision by the legislature of the commonwealth ; and the statutes passed by this legislature are the foundation of all the obligations imposed on the citizens by law to make and to repair fences.
By the statute of 1785, c. 52, legal, sufficient fences between adjoining occupied closes may be made and kept in repair, through the whole year, at the will of either tenant, but at the equal expense of the two tenants, each tenant being liable to the charge of making half the fence. What shall be deemed a sufficient fence is defined by the statute; and if the tenants do not agree on the division of the fence, or if either neglects sufficiently to make or maintain his part, a remedy is expressly provided. Each town is to choose annually two or more fence-viewers, to be sworn to the faithful discharge of the duties of the office. And any two of these officers are authorized, at the request of either tenant, to divide the fence, or the line on which the fence is to be made, and to assign to each tenant his part, which he and the succeeding tenants are to make and maintain ; and also, at the réquest of either tenant, to decide whether the fence of the other is sufficient or not. And if either tenant, after such division and assignment, duly made in writing, and recorded in the town clerk’s office, shall neglect to make or maintain his share so assigned, the other tenant may do it, and may recover at law against the negligent tenant double the expense, as ascertained by the fence-viewers, with twelve per cent interest, if on notice and request it be not paid. This statute does not make void any written agreement respecting the making and repairing of fences.
* The legal obligations of the tenants of adjoining [ * 96 | lands to make and maintain partition fences, where no written agreement has been made, rest on this statute. But in this position are not included adjoining lands, which are not both occupied by the respective owners, nor lands enclosed in a general field or common pasture, nor a close adjoining to a highway. These cases may be governed by different rules.
An assignment pursuant to the statute imposes the same duty as would result from a prescription; and instead of a curia claudendá, one tenant may make and repair the fence belonging to the other on his neglect, and recover of him double the expense, with double interest. And instead of averring, in pleading, that a tenant has used by prescription to make or repair, in the technical form, it is sufficient to allege that he is obliged by law to make and repair and give the assignment in evidence.
*80 When there has been no assignment, but only a written agreement executed by the tenants of the adjoining closes, it may be a question, whether such agreement shall have the force of an assignment; and if not, whether the tenant, whose cattle have escaped, can plead such agreement in bar of an action of trespass, or must have his remedy by an action on the agreement. It is true that a curia claudenda does not lie, but against a tenant, who is obliged by prescription to repair. And, by analogy, an agreement between the tenants, making a division of the fence, each one mutually undertaking to repair his part, would not authorize one tenant, who had made or repaired the fence of the other, on his refusal, to recover of him double the expense.
But there appears to be no good reason, after an actual division by such agreement, if the cattle of one tenant escape into the close of the other tenant, through the defect of the fence, which the other had agreed to make and repair, why the owner of the cattle might not aver, that the party complaining had bound himself by his agreement to make and maintain the fence, and that [ * 97] the cattle escaped * through his default. For if he had agreed to make and repair the fence, he ought by law to fulfil his agreement.
Prescription to fence is allowed at common law, as resulting from an original grant or agreement, the evidence of which is lost by lapse of time; and it is reasonable that the agreement produced should be as effectual as a presumption that it once existed, but is lost, arising from ancient usage. The country has now been settled long enough to allow of the time necessary to prove a prescription, (8) and ancient assignments by fence-viewers, made under the late provincial laws, and also ancient agreements made by the parties, may have once existed, and be now lost by the lapse of time. It seems, then, that the owner of the cattle may aver, that the party complaining ought by law to make and maintain the fence, in which case he must produce the assignment by fence-viewers, or show that he is bound by agreement to make and repair the fence, which agreement he ought in pleading to set out; or that he was bound by prescription, when he should regularly plead the prescription, and may prove it by ancient usage. [See the very sensible *81 and rational opinion of Popham, C. J., against that of the other judges, in the case of Nowell vs. Smith, before cited.]
Every person, then, may distrain cattle doing damage on his close, or maintain trespass against the owner of the cattle, unless the owner can protect himself by the provisions of the statute, or by a written agreement, to which the parties to the suit are parties or privies, or by prescription.
As no agreement or prescription is pleaded or alleged in this case, it is necessary to consider the extent of these provisions — whether they oblige a tenant, liable to make the partition fence, or a certain part of it, to fence against the cattle of strangers, or only against such cattle as are rightfully on the adj'oining land. And we are perfectly satisfied, that he is obliged to fence only as in the case of prescription * at common law. The manifest [ * 98 ] object of the statute was, to establish the rights and obligations of tenants of adjoining occupied closes, respecting the making and maintaining partition fences; and the rights of persons, not having any interest in either of the adjoining closes, remain unaffected by the statute, and are to be defined and protected by the common law. With this "view it is provided, that, after the assignments, neither of the tenants of contiguous closes are obliged to maintain the partition fence through the year, if they otherwise agree. And it cannot be admitted, that strangers to this agreement can lawfully claim any benefit from it.
But, in opposition to this reasoning, it is said, that by the third section of the statute of 1788, c. 65, no person injured in his land by the cattle of another, is authorized to maintain trespass quare clausum fregit, or to distrain the cattle damage feasant, unless his own land is sufficiently fenced. And from this section it is argued, that if the close of the party injured is not sufficiently fenced, he can distrain damage feasant neither the cattle of the tenant of the adjoining close, whence they escaped, nor the cattle of a stranger.
But we do not consider that this section is liable to this construction ; but that all the provisions of it, so far as they extend, are merely in affirmance of the common law. — By this section, a man injured in his close, which is sufficiently fenced, by sheep, swine, horses, or neat cattle, may have his action against the owner, or may distrain them damage feasant. But it cannot be supposed, when goats, asses, or mules, trespass upon his land, which is sufficiently fenced, that all remedy is taken away. It is evident that this section is merely affirmative of remedies existing at common law, from a consideration of the fifth section. By this it is enacted, that, in trespass or replevin, the party injured shall recover his damages, if the beasts *82 escaped into his close through a part of his fence that was sufficient, although a part of his fence was insufficient.
[ * 99 ] * At common law, when a man was obliged by pre scription to fence his close, he was not obliged to fence against any cattle, but those which were rightfully in the adjoining close. (9) But the owner of the cattle may avail himself of the insufficiency of the fence of the close injured, if he has an interest in the adjoining close, to authorize him to put his cattle there, as a right of way, a highway, a license, a lease, or a right of common. (10)
Against this position, the plaintiff has cited Fitz. Abr. 298, note 6, where it is said, that if A be bound to fence against B, and B against C, and beasts escape out of the land of C into the land of B, and thence into the land of A, A shall not maintain trespass against C. But if A be bound to' fence against B, and the beasts of B escape into the lands of A, and thence into the lands of D, a stranger, D may maintain trespass against B, who shall be left to his curia claudendá against A. By calling D a stranger, I suppose is meant, that neither A nor D is bound to fence against each other. For this distinction is cited 10 E. 4, 7, and 36 H. 6, Fitz. Abr. Cur. Claud. Bar. 168.
As this distinction is not supported, but opposed by other cases, we have looked into the authorities cited. The 10 E. 4, 7, clearly proves that D may maintain his action. It is thus laid down by Choice, justice : — “ If I have a close between the close of A on one side, and the close of B on the other side, which I ought to fence, and through defect of fence A’s cattle escape into my close, I can have no action, for it is through my own default. But if they pass through my close into the close of B, he may have an action against A, who shall be put to his writ de curia claudendá against me.” — The case of 36 H. 6 is not reported in the year books, but there is a short statement of it in Fitz. Abr. Bar. 168. And I believe the distinction arose from a mistake of the case. It is thus: — “ Note, that it was adjudged by the court, if my beasts go into the close of another, [de autre,] which is adjoining to my close, [*100] * for the defect of the close of the other, [de Vautre,] and further go into another [autre] close of the other, [de Vautre,] that I shall not be punished, because I do not retake them, and put them again into my close, until reparation be made of the other close, because they would go again,” &c. Now, by *83 mistaking the third close for a close of a third person, who, because of the defect of his own fence, could maintain no action against the owner of the cattle, the distinction arose ; but it is not well founded. — That I have given the true translation appears from Jenk. 4, Cent. Ca. 5. The rule, as there laid down, is, If A has green acre, adjoining to his own close white acre, which adjoins to B’s close black acre, which A ought to fence against, — if B’s cattle go from his black acre to A’s white acre, and thence to A’s green acre, this is no trespass, because A did not fence his white acre against B’s black acre. This seems to be the same case of 36 H. 6, stated in Fitz. Bar. 168.
We therefore consider it settled at common law, that the tenant of any close is not obliged to fence, but against cattle which are rightfully on the adjoining land. And, accordingly, in the entries, where defect of enclosure is pleaded, the party pleading it claims some right or interest in the adjoining close, whence the escape was made, or justifies under those who have such right or in terest. (11)
Let us now examine the bar in the case before us. It is therein averred, that the plaintiff and Trask are jointly and equally bound by law to make and maintain the partition fence between their closes.
But we know of no such obligation imposed by law. The respective occupiers of two closes adjoining are bound, each one to make and maintain half the partition fence ; but unless the fence, or the line on which it is to be made, has been divided by a written agreement between the parties, or assigned pursuant to the statute, or by prescription, neither party is obliged to make or maintain any part of the partition fence.
* Indeed, if there existed a joint obligation to make [* 101 ] the fence, no legal effect would flow from it; for then each party would be bound equally to make every part; and if the fence was defective, each party would be chargeable with the deficiency; and upon the escape of cattle from either close to the other, through a defect in any part of the fence, the owner of the cattle could not allege the escape to be from the deficiency of the other’s fence.
However, it appears to us very immaterial whether there was, or was not, a sufficient fence between the plaintiff’s close and the locus in quo; for the cattle did not escape that way. They escaped from the plaintiff’s close into Low’s close. And it is not averred that Low’s partition fence was insufficient, but that the plaintiff and *84 Low were jointly bound to maintain it, and that it was out of repair. The fence was, therefore, as much the plaintiff’s as Low’s, and the plaintiff is as much in default, on account of the deficiency, as Low. It does not appear that this fence had ever been divided, and therefore each party, at his peril, was bound to keep his cattle on his own land.
But we conceive it immaterial whether the cattle escaped into Low’s close through his default or not. The cattle thence escaped into Riggs’s close, through want of any fence. And it does not appear that Low and Riggs were obliged to make a partition fence If the cattle were rightfully on Low’s close, he was bound, at his peril, to prevent their escape into Riggs’s close; and when they did escape, a trespass was committed. Trask had not fenced her close against Riggs, and the cattle were by wrong on Riggs’s close; the owner of the cattle having no interest in that close, or any right to put his cattle there. And Trask was not obliged to fence against any cattle that had escaped from Low’s close to Riggs’s close. When the cattle escaped into her close from Riggs’s, it was a trespass, and her bailiff might lawfully distrain them damage feasant.
The bar is, therefore, bad, and no sufficient answer to the conusance of the defendants.
[ * 102 ] If, in fact, the cattle had escaped from the plaintiff’s close into Low’s, through the defect of Low’s fence, yet the plaintiff must fail in his replevin against the defendants, and may have his remedy against Low by an action of the case. Vide Cro. Jac. 665. Holbach vs. Warner. — 1 Salk. 335, Star vs. Rookesby.
By the Court. Plea in bar adjudged bad.

 Cro. Eliz. 709, Nowell vs. Smith.

 Fitz. N. B. 297.

 [Spear vs. Bicknell, 5 Mass. 125. — Kent vs. Waite, 10 Pick. 138.— Odiorne vs. Wade, 5 Pick. 421.— Coolidge vs. Learned, 8 Pick.— Gayety vs. Bethune, 11 Mass. 533. — Simson vs. Coe, 4 N. H. 301. — But see note to Spear vs. Bicknell, 5 Mass. 125, and the argument for the plaintiff in Coolidge vs. Learned, — The first report of the English commissioners on real property, — 2 Tuck. Bl. 31 — 36, 266. — Ackerman vs. Shelp, 3 Hals. 125. — Arnold vs. Mundy, 1 Hals. 67. — Carson vs. Blaze, 2 Binn, 490,— Young vs. Collins, 2 Brown. Penn. 293.— Chambers vs. Furrey, 1 Yeates, 167. — Devereux vs. Elkins, 5 Dane, Ab 568. — 3 Dane, 254. — Ed.]

 10 E. 4, 7, 8. — 22 E. 4. — Fitz. Abr. Curia Claudenda, 2. — Jenk. 4 Cent Ca. 5.

 Fitz. N. B. 298, note.

 Rast. Ent. 620, b. 622. —6 Inst. Cler. 677 — 680, and the entries there cited