## Thomas Mooney vs. Edward Maynard.

That the owner of land cannot impound neat cattle taken *damage feasant* in his inclosure, unless the portion of fence which he is bound to repair is *legal fence.*

That the specific provisions of the statute upon this subject are inconsistent with, and repeal, the common law, at least, so far as regards the right to distrain. *damage feasant,* in a case not warranted by the statute.

This was an action of *replevin* for one brindle steer, and one red steer, distrained and impounded at a place in *St. Albans,* called the *Sumner farm ;* to which the defendant avowed, justifying the taking and impounding the steers *damage feasant* on said farm, he being seized and possessed of the same as tenant under *David Stevens, Jr.* the owner in fee. To this the plaintiff pleaded that, at the time when he owned and possessed a certain tract of land adjoining the west side of said *Sumner farm,* called lot No. 11, (which land was lying common,) the steers were feeding and depasturing upon said common land of the plaintiff, and, against his will, escaped into the *Sumner farm* through the defect of the outward or surrounding fence, which it was the duty of the defendant to uphold & keep in repair. To this there was a traverse, and issue to the jury.— On trial in the County Court, the plaintiff showed an actual seizen and possession of lot No. 11, under color of title, commencing in 1815, and continued ever since. It appeared that the plaintiff's farm lies chiefly on the east side of the stage road, and the Sumner-farm lies chiefly on the west side of the east street in St. Albans, and about three fourths of a mile east from

plaintiff's farm ; that an open road or $\left\{\begin{array}{l}\text{Franklin, Jan. 1829.}\\\hline\text{\textit{Mooney} vs. \textit{Maynard.}}\end{array}\right.$
highway passes from the stage road
to the east street, about one hundred rods north of the plaintiff's land, and another about one half mile south of the plaintiff's land ; that fences were erected and upheld on the sides of these roads the whole length of each ; that, between these roads, and in the rear of the farms on said stage road and east street, is a tract of wood-land belonging to different owners, which is separated by fences from the cleared lands of the several farms aforesaid, except that the plaintiff has a pasture of about twenty acres, separated by fence on the west side thereof, from the rest part of his farm, and lying partly upon lot No. 11 ; the rest of which lot is wood-land, and extends about one hundred rods east of said pasture to the improved land on the said *Sumner farm*, which pasture has never been fenced, except on the west side, as aforesaid, but lies open to the whole tract of said wood-land of the plaintiffs and others ; that the plaintiff, for several years, has used this as his ordinary pasture for cattle ; and that the owners of the other farms have not turned their cattle into these woods, except in times of extreme drought or scarcity of feed—And the steers in question, being turned upon this pasture, passed through said open woods to the *Sumner farm*, and did damage to the crops of the defendant, breaking the division fence between said farm and lot No. 11. It appeared that this fence was built more than twenty years ago by the owners of the *Sumner farm*, by whom it had always been supported previous to the impounding of said steers, at which time the defendant called on the tenant of the plaintiff to assist in repairing said fence, which the latter refused.

Evidence was introduced on the part of the plaintiff to show that said fence was not sufficient to answer the statute-description of a lawful fence, nor to stop ordinary neat cattle ; and on the part of the defendant, to show that said fence was sufficient for the latter purpose.

The court charged the jury, that lot No. 11 and the *Sumner farm* ought to be considered as adjoining lands, within the meaning of the statute ; and that it was the joint duty of the plaintiff and defendant to support the fence in question. But that, as no demand or request had been made on the defendant to build or repair his portion of said fence, the defendant had no right to im

Franklin, Jan. 1829.

*Mooney* vs. *Maynard.*

pound the plaintiff's cattle, unless said fence was lawful and sufficient within some of the definitions of the statute, which were repeated and explained by the court. Whereupon, the jury returned a verdict for the plaintiff. The defendant excepted to the charge of the court, and exceptions were allowed, and the cause removed to this court on a motion for a new trial, founded on said exceptions.

*Mr. Smith, in support of the motion.* It is contended, on the part of the defendant, that, by the common law, if owners of cattle suffer them to go upon the land of another, they are liable to make good the damage, without any regard to the condition of the fences, (except in cases where there may be some usage or agreement to the contrary,) and he, who receives the damage, may either distrain or bring an action of trespass.—*5 Bac. Ab.* 179.— *6 Mass. R.* 90, *Rust* vs. *Low et als.* The statutes of this state do not repeal or affect the remedies existing at common law. The statute gives to every person the right to impound cattle found *damage feasant*, or doing damage, in his enclosures, without any reference to the condition of the fences.—*See Stat. p.* 450, *s.* 3. The provisions of the 2d section of the act relating to fences and fence-viewers (*p.* 446.) only gives to the aggrieved party the privilege of making the *whole* division fence at the expense of the party neglecting; but does not make it his duty so to do; nor does the neglect to avail himself of this provision of the statute, take away the right to distrain. The provision of the 8th section of the act relating to pounds, estrays, and lost goods (*p* .452,) applies exclusively to cases where *the* owners of the creatures are unknown, and has nothing to do with the present question. The fence in question was a division fence between the close of the plaintiff and the close of the defendant, and the plaintiff was as much in fault on account of the ruinous condition of the fence as the defendant; consequently he was bound to keep his cattle on his own land.

*Smalley and Adams, in support of the verdict.* The common law, relative to distress, is not applicable to the situation and circumstances of this country, and has never been adopted in this state. No act of the legislature, no adjudication of any of our

Courts, has ever recognized the common       Franklin, Jan. 1829.

law on this subject. Its maxims would be      *Mooney* vs. *Maynard*.

absurd in reference to the condition of the early settlers of this country, and repugnant to the whole system of husbandry in this state. Further: our Legislature has enacted statutes on this subject, in the face of which, to adopt the common law would be to render almost every clause, word, and sentence of those statutes superfluous, void and insignificant. The 7th 8th and 9th sections of the act relating to pounds, (*R. Stat. p.* 452-3) passed March 2, 1797, and the 7th section of the act in addition, passed in 1806 (*stat. p.* 457) and the act in addition to the same, passed 1821, (*stat.* 459, *No.* 6.) recognize the existence of rights and duties of owners of cattle, &c. wholly unknown to the common law. The provisions of these sections are obviously inconsistent with the right to distrain neat cattle, unless when taken on lands inclosed by a legal fence, as defined by the statute relating to fences and fence-viewers.—*Stat. sec.* 1, *p.* 446.—By the 3d section of the act of 1797, relating to pounds, &c. it is made lawful for any person to impound any swine, neat cattle, sheep, or other creatures that shall be found *damage feasant* in his *enclosure.* By the term *enclosure,* the Legislature understood a piece of land surrounded by a legal fence. The terms *enclosure* and *legal fence,* are, in our statute, *synonymous.* This is evident from the wording of the 9th section of the same statute. If this is the correct reading of the statute, the Legislature most clearly intended to abridge the right of distraining *damage feasant* at common law. If not, why give the right of distraining creatures *damage feasant* in *inclosures,* when the right existed at common law, whether the premises were fenced *or not* ? By the 7th section, it is enacted that, if the owner of any creature impounded agreeably to the provisions of the 3d section be unknown, after public notice, &c. it may be sold to pay the damages, &c: By the 8th section, it is provided that no sale shall be made, until the fence, inclosing the premises from which such creature was taken, be found legal by two fence-viewers. This provision of the statute, it will be noticed, deprives the owner of the land of any remedy when the owner of the creature is unknown, unless the fence-viewers shall adjudge, that the fence inclosing the premises is legal and sufficient. No remedy could

MMM

Franklin, Jan. 1829.    } exist on the principles of the common law
*Mooney* vs. *Maynard.*    } by action of trespass, because the person,
against whom the action is to be bronght, is unknown.   Can it
be supposed that the Legislature intended to give the owner of
the premises a remedy by distress, when the owner of the crea-
ture is known, which is expressly taken away when he is unknown?
By the 9th section, the owners of horses, which are permitted
to go at large on the commons, are expressly made liable for
whatever damage they may occasion to any inclosure, though
the fence be insufficient.   Why should the Legislature, by ex-
press statute, give to the owners of the premises the right to im-
pound horses *damage feasant*, though the fence was insufficient, if
the right of impounding previously existed in all cases ?   Taking
these different provisions in connexion, it would be charging the
Legislature with the most absurd trifling, to extend the authority
to impound given in the 3d section of the act relating to pounds,
&c. beyond the cases of cattle, &c. taken doing damage in inclo-
sures made by legal fence ; but if, by the term inclosure, we un-
derstand premises surrounded by legal fence,the provisions of the
statute are consistent and salutary.   It is evident, from the facts
of the case, as stated in the bill of exceptions, that lot No. 11  is
open and vacant land within the meaning of the 2d section of the
statute relating to fences,&c.—*stat.*446;and the plaintiff is,therefore,
under no obligation to build or repair the fences between his un-
improved lands and the cultivated fields of the defendant.Nor is he
bound to restrain his neat cattle from running at large, provided
they do not break through inclosures made by legal fence.

Hutchinson, J. delivered the opinion of the Court. This case
has lain with the court for consideration these two years.   Some
difficulties have arisen from the shape in which the questions
are presented in the bill of exceptions, and some from the im-
portance of giving a right construction to the statute, which con-
tains provisions inconsistent with the common law.    Two mem-
bers of the court,not with us at the first argument,have heard the
arguments of this term, and we have arrived at a decision in the
cause.

It seems that fences by the sides of four roads that cross each
other at right angles, inclose a large tract of land, owned by dif-

ferent people; in the centre of which is a large ⟩ Franklin, Jan. 1829.
piece of woods, surrounded by the back fences ⟨ *Mooney* vs. *Maynard.*
of the several farms, into which, as a large common, the several own-
ers turned in their cattle in times of drought and scarcity of feed.
That the defendant's farm lay east of this wood, and the plaintiff's
farm lay west of it. The plaintiff, at the west end of the woods, has a
clearing of twenty acres used as a pasture, and not separated by any
fence from the piece of woods. The defendant, and those under
whom he claims, have supported the fence all the way upon the
west side of his inclosure, and adjoining the woods, for twenty
years. This fence was out of repair, and the plaintiff's steers
went from said pasture through the woods, into the inclosure of
the defendant, and did damage. The defendant impounded them,
and the plaintiff has brought his writ of replevin. The defendant
has avowed the taking, and justifies on the ground the steers were
doing damage. The plaintiff replies that his steers were feeding
in his said pasture, and escaped against his will, &c. and went in-
to the defendant's said inclosure, through the defect of the fence
which it was the duty of the defendant to repair. This was tra-
versed.

The exceptions, upon which the case is brought up to this court,
were so inattentively drawn, that neither the testimony referred to,
nor the charge of the court, seem very nearly allied to the issue ;
at least, in some parts thereof. The judge is made to charge as
if deciding the weight of evidence when instructing the jury upon
the liability of the plaintiff to maintain half of the fence through
which the steers passed to do the damage complained of. But,
as the instructions upon that point were in favor of the defendant,
and the plaintiff obtained a verdict, the defendant is not now at
liberty to complain of those instructions.

The only part of the instructions to the jury, which would au-
thorize a verdict for the plaintiff, was, that which decided that the
plaintiff was entitled to notice from the defendant to make his half
of the fence, before his cattle were liable to be distrained damage
feasant. This the court consider correct. More than this might
have been correct. The jury might have been left at liberty to
find the defendant liable by the analogy of prescription, to main-
tain the whole fence, if they believed that the defendant, and

Franklin, Jan. 1829.
*Mooney* vs. *Maynard.*

those under whom he claimed, had upheld the same fence for twenty years, as stated in the testimony. But, surely after so long a support of the fence without charge to the plaintiff, he must not have his cattle impounded before he has notice of a claim that he should make one half of the fence. This we may say with confidence, if the provisions of our statute are to govern.

But the defendant contends that the statute provisions are not repugnant to the common law, but are cumulative remedies, and in affirmance of the common law; and a case is cited from the *6th of Mass. R.* 90, *Burt* vs. *Low et al.*, which shows that the court in that state, consider the common law in full force, notwithstanding their statute. Should we follow that decision it would effect a great and important change in the concerns of keeping cattle. The cattle of many persons, especially the cows of poor persons, in all parts of the state, have always been permitted to run upon the highways and commons; no man presuming to take them up damage feasant, unless his own fences would stand the test of the law. And this practice is well warranted by our statute, the provisions of which are so various and extensive, and form such an entire system upon the subject, it must have been intended to supercede the common law.

We must not be understood to mean, that a man who might distrain and impound, might not, instead thereof, commence his action at common law. But we do mean, that a man who could not lawfully distrain and impound, by reason of the defect of the fences, which he ought to keep in repair, cannot maintain an action at common law for the same injury: nor can a man distrain as at common law, unless his part, at least, of the fences is in such repair as the law requires.

These provisions of the statute are particularly noticed in the argument of the plaintiff's counsel, and need not be repeated by the court.

The judgment of the County Court is affirmed.

*Smalley* and *Adams*, for the plaintiff.

*J. Smith*, for the defendant.