## THEODORE LYMAN *versus* JONAS C. GIPSON.

Where a horse *damage feasant* in an enclosure was impounded by the owner of the land, and subsequently sold by auction in due form of law, for the indemnification of such owner, it was *held*, in an action of replevin brought by the original owner of the horse against the purchaser, that the declarations of the owner of the land, offered in evidence to show that the impounding was illegal, were not admissible, especially such as were made after the sale.

Where cattle break into a close, the owner of the close has a remedy under the process of distress, for damage done by the cattle to personal property therein.

Appraisers appointed to estimate the damage done by cattle distrained *damage feasant*, are not limited to the amount of damages claimed by the owner of the close in the notice of distress given by him to the owner of the cattle.

The owner of a close having impounded a horse doing damage therein, sent a notice to the owner of the horse containing these words : " I have taken up as an *estray*, doing damage in my enclosure, a horse belonging to you " ; " and my damages are six dollars." It was *held*, that a sale of the horse in the manner prescribed by statute, in the case of animals taken up *damage feasant*, was nevertheless valid, the word *estray* not being used technically, in such notice.

Under *St.* 1785, *c.* 65, § 3, [Revised Stat. *c.* 113, § 4] providing, that any person injured by cattle in his lands " that are inclosed with a legal and sufficient fence," may maintain trespass against the owner of the cattle, or distrain them, it was *held*, that where cattle unlawfully going at large in a highway broke into a close adjoining thereto, the owner of the land was entitled to such remedies, although the land were not enclosed with a sufficient fence, against the highway, he not being bound to fence against cattle unlawfully at large in the highway.

REPLEVIN for a stud-horse. The trial was before *Putnam* J., upon the issue of property in the plaintiff.

The defendant admitted that the horse originally belonged to the plaintiff ; but claimed title in himself under a sale by auc-

tion made by Lewis Bemis, who had taken the horse *damage feasant.*

It appeared, that Bemis kept a mare within an enclosure adjoining a highway in Waltham ; that about daylight on the morning of May 31st, 1833, Bemis called to his hired men to go out and secure the plaintiff's horse, which he said was with his mare in the enclosure ; that when the first of the men got out of the door into the enclosure, the gate was open, the top bar being cracked but not removed ; that the horse and mare were together within the enclosure near the gate, and going towards it ; and that when Bemis came out of the house, the horse was in the highway, where they secured him and impounded him in Bemis's barn.

The plaintiff proved, that Bemis had said, that when he first saw the horse, on the morning in question, he was in the highway. The plaintiff thereupon contended, that the distress thus made was unlawful, as being made in the highway. But this objection was overruled, for the sake of proceeding in the trial.

On the same day the following notice was sent by Bemis to the plaintiff : " I hereby notify you, that I have taken up as an *estray* doing damage in my enclosure, a grey stud-horse *belonging to you ;* said horse broke down the gate and fence, and went into my ground and damaged my mare ; and I have the said horse impounded, under my immediate care and inspection, in my barn at Waltham, and my damages are six dollars. Said horse I impounded on the morning of the 31st of May, 1833."

A warrant was issued by the town clerk of Waltham to cer tain persons, requiring them to ascertain and estimate the dam age done by the horse, and also to appraise the value of the horse ; and the appraisers, in their return, estimated the damages at the sum of $ 16·25, and appraised the horse impounded at the sum of $ 30. The damages not having been paid, the horse was sold by auction in due form of law, to the defendant, for the sum of $ 62.

The plaintiff then offered to prove by the testimony of one of the appraisers, that in estimating the damages they took into consideration the injury done by the horse to the mare, which constituted a large part of such damages. The defendant ob-

jected to the admission of this evidence ; but this objection was also overruled, for the purposes of the trial.

The plaintiff also offered to prove, that since this action was commenced, Bemis had declared to a hired man of the plaintiff, that the horse was in the highway when he first saw him on the morning in question. The defendant objected to this evidence ; but it was admitted by the judge.

The defendant contended, that under the circumstances of the case, the burthen of proof was on the plaintiff, to satisfy the jury that the gate was broken or opened by some other agency than that of the horse ; and that if the plaintiff did not remove their doubts on this point, they ought to find for the defendant.

The plaintiff, on the other hand, contended that the burthen of proof was on the defendant, to satisfy them that the horse actually broke or opened the gate ; and if he failed to remove their doubts on this point, they ought to find for the plaintiff.

This point was ruled by the judge in favor of the plaintiff.

The only question submitted to the jury to decide, was, whether the defendant had satisfied them that the gate was shut, or, in other words, whether the land of Bemis, at the time, was enclosed by a legal and sufficient fence or not.

The jury returned a verdict for the plaintiff.

The jury stated, on being inquired of by the judge, that it was not proved to their satisfaction, that the land was enclosed by a legal and sufficient fence.

The verdict was taken subject to the opinion of the whole Court upon the points of law raised at the trial.

*Oct. 17th,*
1835.

*Greenleaf,* for the defendant. The declarations of Bemis were inadmissible in evidence. He is not a party to the action, nor, in one sense, grantor to the defendant, and could have been a witness for either party. He is not liable to the defendant ; for there was no warranty on his part, express or implied, he not having sold the horse as his own property. 2 Kent's Comm. 478. At any rate the declarations made by Bemis after the sale to the defendant, should have been excluded. If the declarations made after the sale were improperly admitted, the plaintiff cannot say, that they had no bearing, if by any possibility they might have affected the verdict. In the present

case it is very probable that they did influence the jury. *Appleton* v. *Boyd*, 7 Mass. R. 131 ; *Richardson* v. *Field*, 6 Greenl. 303 ; *Haven* v. *Brown*, 7 Greenl. 421 ; *Woodman* v. *Coolbroth*, 7 Greenl. 181 ; 1 Stark. on Evid. 390.

Bemis had a right to impound the horse, under the circumstances. *Clement* v. *Milner*, 3 Esp. R. 95.

The testimony of one of the appraisers in regard to the estimate of damages was incompetent. The return is conclusive evidence of all the facts it contains ; and the admission of evidence to contradict it would lead to confusion, and to frauds on innocent purchasers, and would be against public policy. 2 Stark. on Evid. 729 ; 3 Stark. on Evid. 1044 ; *Ladd* v. *Blunt*, 4 Mass. R. 402 ; *Wellington* v. *Gale*, 13 Mass. R. 483 ; *Boody* v. *York*, 8 Greenl. 272.

*Hoar*, for the plaintiff, to the point, that Bemis had no right to impound the horse, cited *Brownlow* v. *Lambert*, Cro. Eliz. 716 ; that the notice to the plaintiff was insufficient, inasmuch as it set forth, that the horse was taken up as an estray, instead of stating simply that he was taken up in Bemis's enclosure, *damage feasant*, the provisions of the *St.* 1788, *c.* 65, being different in the two cases, Jacob's Law Dict. *verb. Estray ;* 1 Bl. Com. 297.

SHAW C. J. delivered the opinion of the Court. The Court are of opinion, that it was not competent for the plaintiff to give in evidence the statements of declarations of Bemis, especially those made after the sale ; and for this cause a new trial must be granted. As several other points were made, a decision of which may be important, should another trial be had, we have taken them into consideration.

It was objected to the regularity of the proceedings under the distress, that the appraisers took into consideration, damage done to personal property ; and this gave rise to some incidental questions as to the mode of proving the fact, if admissible, by the testimony of the appraisers.

As in an action of trespass *quare clausum* such damage could be recovered by way of aggravation, and as the statute of replevin gives the like remedy by distress *damage feasant*, for a trespass, the remedy must be deemed co-extensive, as to

Lyman
v
Gipson.

the nature and amount of the damage to be recovered    St
1788, c. 65, § 3.

Another objection was, that damage was awarded by the appraisers beyond the amount, of which the distrainer, Bemis, had given the plaintiff notice. Had the plaintiff tendered the amount thus stated and the expenses, Bemis would have been bound by it, and must have surrendered the horse. But as he did not tender this, or any other sum, and Bemis was obliged to have an appraisement, he was not limited to the damage claimed in his notice. There is very little analogy between this and the *ad damnum* in a writ. It is more like an offer or demand *in pais*, which, if not acceded to, the party is not bound by, in ulterior legal proceedings.

It was also insisted, that Bemis himself, in his notice to Lyman, stated that he had taken up the horse as *an estray*, and was, therefore, required by the statute to adopt another and a different course, and, consequently, that his proceeding was irregular and erroneous, and the sale to the defendant void.

An estray technically and as understood in the statute, is an animal of which the owner is unknown. In this case, Bemis addressed a note to Lyman, saying, " I have taken up as an estray doing damage in my enclosure, a grey stud-horse *belonging to you*." This shows clearly that he did not use the word " estray " technically, but did in fact know the owner of the horse, and professed to have taken him *damage feasant*.

But perhaps the most material point in the present case is this, whether the party distraining, Bemis, could take up and impound the plaintiff's horse, without showing that his own close was secured by a legal and sufficient fence, and under this head showing also, that his fence was up and his gate closed, at the time the horse broke into his enclosure.

The provision of *St.* 1788, c. 65, § 3, is, that any person injured &c. in his lands enclosed with a legal and sufficient fence, may have an action of trespass against the owner, or may impound the cattle or horses, &c.

The words here used, " enclosed with a legal and sufficient fence," applying, as they do, to a great variety of cases and circumstances, must be taken distributively, and must be understood to mean, so enclosed, when by law a fence is neces-

sary. But it has been often decided, that an owner is not bound to fence against a highway, against cattle or other animals unlawfully going at large in the highway, and therefore, without having any sufficient fence against the highway, if animals going at large unlawfully break into his close, he may have his remedy by distress ; and the same rule applies to trespass *quare clausum. Melody* v. *Reab*, 4 Mass. R. 471 ; *Rust* v. *Low*, 6 Mass. R. 90 ; *Stackpole* v. *Healy*, 16 Mass. R. 33. By the statute which was in force when this transaction took place, *St.* 1788, c. 44, horses were prohibited from going at large in the highways, except under certain restrictions ; and by the second section, every ungelded horse, of which the horse in question was one, was absolutely prohibited from going at large, under a penalty. We think, therefore; that whether Bemis had a sufficient fence against the highway or not, he had a right to distrain the horse, found *damage feasant* in his close ; and whether his gate was closed or not, was not a fact material to his right to distrain.

Lyman<br>v.<br>Gipson.

Verdict set aside, and new trial granted