## JOSEPH THAYER *vs.* STEPHEN ARNOLD & another.

Where a party is not bound by prescription, agreement, or assignment of fence viewers, to maintain a fence between his land and that of an adjoining owner, he may sustain an action of trespass *quare clausum fregit* against the adjoining owner whose cattle escape into his land. The common law on this point is not altered by the statutes of this Commonwealth.

TRESPASS for the breaking and entering of the plaintiff's close by the defendants' cattle.

It appeared, at the trial in the court of common pleas, that the defendants' land adjoined the land of the plaintiff upon which the alleged trespass was committed, and that there was no lawful fence between said lands ; and it was contended by the defendants, that if their cattle escaped from their land and went upon the land of the plaintiff by reason of there being no lawful partition fence, they were not liable to the plaintiff in an action of trespass, unless they were bound by prescription or agreement to repair the deficient fence through which their cattle went upon the plaintiff's land. But the court ruled "that the defendants were liable, if their cattle escaped from their land and went upon the plaintiff's land, although the fence between them was deficient ; provided the plaintiff was not bound by prescription, or agreement, or assignment of fence-viewers, to keep such defective fence in repair." The jury returned a verdict for the plaintiff, and the defendants alleged exceptions to said ruling.

*Washburn,* for the defendants.

*C. Allen,* for the plaintiff.

DEWEY, J. The question here raised was much considered in the case of *Rust* v. *Low*, 6 Mass. 90, in which the late Chief Justice Parsons embodied in the opinion of the court, drawn up by him, what were then supposed to be the leading principles applicable to this subject. The views there stated were, it is true, to some extent, foreign to the questions put in issue by the particular case, and may be considered, to that extent, as *obiter dicta ;* but I am not aware that any serious question has, before the present instance, been raised as to their soundness. The rule as therein stated is, that at common law no man is bound to fence against an adjoining close, unless by force of prescription ; but that every man must, at his peril, keep his cattle on his own close, and prevent their escape therefrom. This is to be taken, however, with the further doctrine, that an assignment, under the statutes of Massachusetts, imposes the same obligations upon the parties as would result from prescription, and that an agreement in writing between the tenants of adjoining closes, making a division of the fences, and each mutually stipulating to maintain and keep in repair his part thereof, would also be a good justification for him whose cattle had escaped into the close of the other through the neglect of the other to maintain his part of the fence. The rule at common law may be found also stated in Com. Dig. Droit, M. 2. 3 Kent Com. (3d ed.) 438. 1 Cow. 79, *note.*

As a rule of the common law, it is not denied by the counsel for the defendants, that if two persons are possessed of adjoining closes, each must take care that his cattle do not enter upon the land of the other ; there being no existing legal obligation, as to the maintaining of a fence, arising by prescription or otherwise. But it is contended, that the common law doctrines on this subject either were never applicable here, or, if they were, that our statutes have abrogated them. *St.* 1785, *c.* 52. Rev. Sts. *c.* 19, § 2.

It is urged, that to allow the maintenance of the present action is practically unjust, and contravenes the purposes of the statute, as it allows every man to institute an action of trespass against his neighbor, whose cattle may have strayed into his premises

through defect or want of fences, when the party thus instituting his action has taken no measures to protect his land by the erection of any fence, or any portion of a partition fence, notwithstanding the statute enjoins such duty. The error here seems to proceed from the assumption that the right to maintain an action of trespass, in such a case, arises under our statute; whereas the right to institute such action is a right under the common law, and the party who defends seeks to shelter himself under the statute provisions. Upon general principles, it is no more the duty of the individual, who has a field adjacent to that which his neighbor proposes to depasture with his cattle, to take the incipient steps to cause a partition of the fences between their adjacent lands, than of him who owns the cattle and intends to use his land for depasturing them. Both parties are entitled to the privileges given by statute, authorizing proceedings for dividing their fences and assigning to each his proper portion thereof; and if either wishes to avail himself of its provisions for his protection, he must move in the matter, if his neighbor does not. By taking the proper steps, and causing a partition to be made of the fences, and duly maintaining and keeping in repair the part assigned to him, he can easily avoid all liability to an action, if his cattle escape into the adjacent lot through defect of the fence assigned to the owner of such lot. If he neglects to procure a division of the fence, it is not for him to complain that the owner of the adjacent lot has been alike inactive in the matter; but the result must be, that both parties must be presumed to elect to occupy and improve their lands under the rules of the common law, and subject to the common law responsibilities.

We take the rule therefore to be, that the obligation to make and maintain a partition fence is equally operative upon both adjacent owners; each party is equally bound to move in the matter; and until such division, there can be no deficiency or neglect alleged as to the fence of either party, separately and individually. If either therefore puts cattle on his own land, and they enter upon the land of the adjacent proprietor, there being no partition of the fence separating the lots, he will be liable to an

action of trespass therefor. This was the doctrine of *Rust v. Low*, which arose under *St.* 1788, *c.* 65, a statute certainly more favorable to the position relied on by the defendant, than the Rev. Sts. *c.* 19, which constitute our present statute law on the subject.

Under the *St.* of 1788, *c.* 65, a strong argument against the application of the common law rule in Massachusetts was derived from the following provision of § 3 : "Any person injured in his tillage, mowing, or other lands under improvement, that are enclosed with a legal and sufficient fence, may have and maintain an action of trespass *quare clausum fregit* against the owner of the cattle for his damages." It was contended, and certainly with some plausibility, that the statute had made the having and maintaining of a sufficient partition fence a condition precedent to the right of maintaining an action of trespass for cattle escaping from an adjacent lot. But § 4 of *c.* 113 of the Rev. Sts. which seems to have been substituted, in the revision of the statutes, for the section of *St.* 1788, *c.* 65, just quoted, has materially changed the phraseology of the provision on this subject. The words, "being enclosed with a legal and sufficient fence," are omitted, and the following restriction upon the right to recover is introduced : "Provided, that if the beasts shall have been lawfully on the adjoining lands, and shall have escaped therefrom, in consequence of the neglect of the person, who has suffered the damage, to maintain his part of the division fence, the owner of the beasts shall not be liable." This restriction upon the right to maintain the action, as found in the revised statutes, clearly applies, and applies only, to cases where there has been a division of the fence. It is when the party neglects to maintain "his part of the division fence" ; but, it cannot with propriety be said that any particular part of the fence is to be kept in repair by one rather than the other, until a division has taken place.

The opinion in *Rust* v. *Low* is therefore quite sufficient to embrace the question arising under the present statute law of the Commonwealth.

It has, however, been urged, that the present question did

not necessarily arise in the case of *Rust* v. *Low* ; the facts there presenting a case of cattle trespassing upon the land of the plaintiff, which cattle were not lawfully on the adjacent lot.    This is correctly stated, and is to be considered in the effect to be given to the opinion delivered in that case ; and this circumstance has made it necessary to consider the general question more fully.    But, as before remarked, the broad doctrine there stated has, at no period since, been brought into question in this Commonwealth, in any litigated case.    In the mean time, several decisions in our sister States have been had, sustaining the entire views stated by the court in *Rust* v. *Low.*

The subject came before the supreme court of Maine, in *Little* v. *Lathrop*, 5 Greenl. 356 ; and that court fully adopted the doctrine stated in· *Rust* v. *Low*, respecting the duties and liabilities of the owners of adjacent lots, as to maintaining fences. The same question has arisen in New Hampshire, in *Avery* v. *Maxwell*, 4 N. Hamp. 36, and in ·*Tewksbury* v. *Bucklin*, 7 N. Hamp. 518.    In the latter case, the rule is thus stated : " Where two men own adjoining closes, with an undivided partition fence, which both are equally bound to keep in repair, each is bound to keep his cattle on his own land, at his peril."    The same doctrine is also held in New Jersey ; *Coxe* v. *Robbins*, 4 Halst. 384 ; *Chambers* v. *Matthews*, 3 Harrison, 368 ; and in Pennsylvania.    *Adams* v. *McKinney*, Addison, 258.

The only case that I have found, which holds a contrary doctrine, is that of *Studwell* v. *Ritch*,˙14 Connect. 292, where a majority of the members of the court held that the owners of adjacent lands, neglecting to maintain partition fences, could maintain no action by reason of the cattle of the one trespassing upon the land of the other.    The decision admits the rule of the common law to be otherwise, but answers that it has been changed by force of statutes in Connecticut, which are considered to have restricted the right to recover damages, in such cases, to owners of lands having sufficient fences.    The statutes of that State are, I think, more direct and unqualified in their language than ours, especially our revised statutes, which seem to be somewhat modified, and probably designedly adapted to

50 *

carry out the principles that had been stated in the case of *Rust* v. *Low*. Upon the question, as it arose in Connecticut, Mr. Justice Sherman dissented from the opinion of the majority of the court ; holding very strongly that the doctrines of *Rust* v. *Low* were the true doctrines to be applied there, and that these statutes had not changed the common law rule in cases where no division of the fences had been made, and no particular portion assigned to each of the adjacent proprietors.*

Another suggestion was made in the argument of the present case, which it may be proper to notice. It was said that the permitting of adjacent lands to lie unenclosed by any sufficient fence to protect them from intrusion by cattle was of itself virtually a license by the owners to each other that the lands might be used in common, or might, at least, be entered upon without liability to an action of trespass.

Cases may undoubtedly occur, where the circumstances will well warrant the presumption of such license ; but something must be disclosed beyond the mere fact of a want of division fences. There is nothing shown in this case to defeat the plaintiff's right of recovery.

*Exceptions overruled.*

---

* See *Mooney* v. *Maynard*, 1 Verm. 470, where it was held that the statutes of Vermont had altered the common law on this subject