CANEFOX, Respondent, v. CRENSHAW, Appellant.

1. Where a *buffalo bull*, a wild, vicious and mischievous animal, breaks into a close, the owner of such close may kill him if this be necessary to preserve his property from destruction, although the close may not be fenced in the manner required by the act regulating inclosures. (R. C. 1845, p. 575.)

### *Appeal from Greene Circuit Court.*

Plaintiff, in this action, sought to recover damages for the killing by the defendant of a buffalo bull. The following answer (the striking out of which constitutes the error complained of) was struck out, on motion of plaintiff : " And the said de-

fendant, for answer to plaintiff's petition, says, as to killing said bull in plaintiff's petition mentioned, that before the time of said killing, had been and was accustomed to doing mischief to said defendant's cattle—had been and was accustomed to jump into the inclosures of defendant over a good fence—the said bull being a buffalo bull, and being a wild and mischievous animal, worried the cattle of said defendant in said inclosures, and injured the fruit trees—and said bull, while in said inclosure of said defendant and at the time of so killing, was in the act of destroying the property of defendant, and the said bull was endeavoring to get defendant's cows with calf—and said bull, outside of said inclosure, and on the lands of the said defendant was then and there doing damage to defendant's cattle, which said defendant then and there owned—his cattle of good stock, and which he was anxious to improve—and said buffalo bull was jumping on and endeavoring to get them with calf and worrying them—and did then and there do them great damage, of which plaintiff was aware, and had full notice of the same—and the said defendant says that the said bull being so accustomed as aforesaid first before said killing of said bull by said defendant, was in the inclosure of defendant, having jumped a good fence of said defendant, and was then and there destroying the property of defendant, and the said bull being then and there a wild and vicious and mischievous animal, the property of defendant's was then and there endangered and destroyed by said bull of the value of one hundred dollars in said inclosure there situate, and for which reason and because the said bull could not otherwise be restrained or hindered from worrying the cattle of said defendant and destroying the property of defendant, he, the said defendant, at the time mentioned in plaintiff's petition, did kill said bull, as it was lawful for him to do, for the causes hereinbefore stated, which is the killing of said bull, mentioned in said petition, whereof the plaintiff hath complained against the defendant in this petition, and now praying fully answered, prays to be herein dismissed without his costs.

*Otter* and *Hendricks*, for appellant.
*F. P. Wright*, for respondent.

LEONARD, Judge, delivered the opinion of the court.

We must reverse this judgment. The answer alleges substantially that the buffalo bull was a wild, vicious and mischievous animal—that he had broken into the defendant's field, and was in the act of destroying the defendant's property of the value of one hundred dollars, when the defendant killed him, not wantonly but from necessity, because he could not otherwise be restrained. Without undertaking to determine the precise conditions that will justify the killing of such an animal, we may safely assert that if the facts be as here stated, the killing here complained of was quite justifiable not only in a legal but in a moral point of view. In every system of jurisprudence there are cases in which the law allows a party to protect his own rights without appealing to the courts for that purpose, and by the common law one may not only *defend* his property from impending wrongs, but may in some cases *redress* his own injuries. When we are forcibly attacked in our property we may repel force by force, and the breach of the peace that happens is chargeable to our adversary ; and when unlawfully deprived of it, we may retake it wherever we can find it, so that it be not done in a riotous manner, or attended with a breach of the peace. We may, ourselves, abate a nuisance that is injurious to our rights, doing no unnecessary harm, and take and detain animals that are trespassing upon our land, not merely to prevent a continuance of the wrong, but to constrain their owners to make satisfaction for the damage already done. (3 Stephen's Com. 361 ; Earl of Lonsdale v. Nelson, 2 Barn. & Cress. 311.) And upon these established principles it is plain enough that if this animal was about to destroy the defendant's property, the defendant had a right to kill him, to prevent the impending injury, although it might have been otherwise if the property endangered had been of trivial value, so as to have rendered applicable the maxim

" *de minimis lex non curat;*" or if the defendant had at hand other means of preserving his own property from destruction besides the destruction of his neighbor's.

In coming to this conclusion, we of course assume that the bull was *unlawfully* in the defendant's field, as he undoubtedly was, *unless it was the duty of the defendant to have fenced against him.* But if such was the defendant's duty and he neglected to protect himself by a lawful fence, and in consequence of this failure the animal strayed into his field and did the mischief complained of, the damage would be attributable to his own fault, and he of course would be without remedy, either judicial or extra-judicial. The defendant, however, was under no such obligation, either at common law or under the provisions of our statute concerning inclosures. In 3 Dane's Abr. c. 76, art. 9, sec. 19, it is said : " Anciently every man was bound to keep even his cattle at his peril so that they injured not his neighbors. This principle extended to all the animals a man kept; to fence or build *against them* to restrain them was no part of the system ; and this principle remains the same in most parts of Europe, and hence fences are not common. But several centuries ago, the principle was done away in England and that of fences substituted, and thence it became a general principle there, as it has been here, [in Massachusetts,] for each occupant to fence his land in certain proportions, and to rely on fences for its protection. But the general principle was thus altered only in regard to *creatures properly restrainable by fences, as horses, cattle, sheep,* &c., but not in regard to animals not restrained or kept within bounds by common fences. *As to them the ancient principle is still in force, and their owner must keep them at his peril.*" Accordingly, Hale (1 Pleas. Cr. 430) remarks, in reference to animals "*feræ naturæ,*" that " the owner must, at his peril, keep them up safe from doing hurt ; for, though he uses his diligence to keep them up, if they escape and do harm, the owner is liable to answer in damages." But it is proper to observe here that the duty to fence against animals, referred to in

the above extract from Dane's Abridgment, is not a duty imposed by the *common law*, but exists by *prescription* only, and is limited not merely to *domestic animals*, but to such domestic animals as are rightfully on the adjoining land. (Rust against Low, 6 Mass. 90; Dovaston v. Payne, 2 Hen. Blac. 527; 6 Bac. Abr. "Trespass," 92, p. 594; Holladay v. Marsh, 3 Wend. 146.)

Several of the states have prescribed by statute what shall be deemed lawful fences, and provided the penalties to be inflicted on the owners of domestic animals that break through them and do damage; and in some of these states it has been holden that the effect of these provisions is to impose upon a party the duty of inclosing his field with a lawful fence, in order to entitle him to an action for any damage done there by domestic animals, although this has been determined otherwise in other states. (Studnell v. Ritch, 14 Conn. 300; Seely v. Peters, 10 Illinois, 146; Rust v. Low, 6 Mass. 90; Little v. Lathrop, 5 Greenl. 358; Chambers v. Mathews, 3 Harr., N. J., 368.) But if, in the construction of our statute of inclosures, we hold that a party must fence his field with a lawful fence before he can complain of damage done to him there by the animals of others, we must of course limit this immunity to the domestic animals enumerated in the statute against which he is bound to fence, and this will leave the owners of animals "*feræ naturæ*" under the same obligation to keep them at their peril from doing harm that the common law imposed upon them.

Under any view of the law, therefore, upon the facts stated in the answer, the plaintiff would have been liable for the damage about to be done to the defendant by this animal, and if the circumstances were such as we have enumerated, the defendant was at liberty to protect his own property by killing the animal that was about to destroy it; but under what precise conditions he could lawfully resort to such a measure, can not and ought not to be determined until the facts of the case are more fully developed. It is sufficient for the reversal of the present judgment that if the facts substantially stated in the

answer be made out in the proof, they are sufficient to justify the killing here complained of.

The judgment is reversed, and the cause remanded.