## MORSE *v.* BOSTON & LOWELL RAILROAD.

When A's cattle, escaping from his pasture into B's adjoining field through B's insufficient fence, have been turned into a highway by B, been abandoned there by him, and left to run at large, and have strayed thence into B's land, and are roving there without the consent or knowledge of A or B, the owners of the adjoining lands are not bound to fence against them.

Railroads are not excepted from the rule that the landowner's duty of fencing against cattle on adjoining land is limited to cattle that are rightfully there.

If A wrongfully neglects to remove or bury his ox, found dead on another's land, the landowner, being in no fault, and being compelled to avoid a nuisance by burying the carcass, is under no obligation to save the hide. If he saves and sells it, the proceeds are to be disposed of on equitable principles, but not in an action of tort brought by A.

CASE, for killing the plaintiff's ox. There was also a count in trover. Facts found by the court. The ox and three other cattle belonging to the plaintiff strayed from his pasture into Glover's adjoining field through Glover's insufficient fence. Afterwards the ox (under the circumstances stated in the opinion) was left in the highway, strayed upon Glover's land, and thence to the railroad, and was killed by the defendants' locomotive.

*Smith & Sloane*, for the plaintiff.

*Page & Shurtleff* and *Aldrich & Remich*, for the defendants.

Doe, C. J. "At common law the owner of a close was not bound to fence against an adjoining close, unless by force of a prescription; but he was at his peril to keep his cattle on his own close, and to prevent them from escaping; and if they escaped they might be taken on whatever land they were found damage feasant, or the owner was liable to an action of trespass by the party injured." *Avery* v. *Maxwell*, 4 N. H. 36. Under the statute of fences, the landowner "is obliged to fence only as in the case of prescription at common law. The manifest object of the statute was, to establish the rights and obligations of tenants of adjoining occupied closes, respecting the making and maintaining partition fences; and the rights of persons not having any interest in either of the adjoining closes remain unaffected by the statute, and are to be defined and protected by the common law. . . . At common law, when a man was obliged by prescription to fence his close, he was not obliged to fence against any cattle but those which were rightfully in the adjoining close." *Rust* v. *Low*, 6 Mass. 90, 98, 99. As between adjoining owners, or those having their rights, the common-law duty of keeping their cattle on their own land is modified by statute in a limited manner and to a limited extent that do not affect this case. So far as the claim asserted by the plaintiff against the defendants is concerned, the plaintiff was bound to prevent the escape of his cattle from his pasture not only by performing his own fencing duty, but also by compelling adjoining owners to perform theirs. Glover's statutory duty to maintain his part of the fence between his field and the plaintiff's adjoining pasture could be enforced by the plaintiff, and could not be enforced by the defendants. G. L., *c.* 142. The defendants are not liable to the plaintiff for the consequences of his non-enforcement of Glover's duty.

Four of the plaintiff's cattle strayed from his pasture into Glover's adjoining field through Glover's insufficient fence. If they had gone across the field into C's adjoining land through C's insufficient fence, the law of the authorities is that the plaintiff would have been liable to C in trespass, and would have had his remedy against Glover. If they had been killed by falling down a precipice in C's land, the insufficiency of C's fence would not have made him liable to the plaintiff. In a certain sense, and for some purposes, as between the plaintiff and Glover, the cattle were rightfully in Glover's field. *Roby* v. *Reed*, 39 N. H. 461, 465. Their entry through Glover's insufficient fence was not a trespass. But they were not there rightfully, in the sense that would require C to fence against them. *Rust* v. *Low*, 6 Mass. 90, 98, 99, 102; *Mills* v. *Stark*, 4 N. H. 512, 514. If they had passed through

Glover's field into the defendants' adjoining road without interference from any quarter, it would not be material whether the defendants were bound to maintain. the whole, or half, or none of the fence beteween the field and the road.   Railroads are not an exception to the rule that the duty of fencing against cattle on adjoining land is limited to cattle that are rightfully there.   *Mc-Donnell* v. *Railroad*, 115 Mass. 564–566; *Jackson* v. *Railroad*, 25 Vt. 150; *Woolson* v. *Railroad*, 19 N. H. 267, 269, 270; *Towns* v. *Railroad*, 21 N. H. 363; *Cornwall* v. *Railroad*, 28 N. H. 161; *Chapin* v. *Railroad*, 39 N. H. 53; *Mayberry* v. *Railroad*, 47 N. H. 391; *Giles* v. *Railroad*, 55 N. H. 552, 553, 555, 556.   Like other occupiers and owners of land, the defendants are not liable to the plaintiff for not fencing against his cattle when they are roaming across Glover's field under such circumstances that the plaintiff would be liable to the defendants for damage caused by their passing from the field into the defendants' road.

When Glover found the cattle in his field, he could lawfully have driven them back into the pasture without the plaintiff's consent, and against the plaintiff's objection; and thereafter he could have kept them out of his field by performing his own fencing duty, and compelling the plaintiff to perform his.   Glover's right to drive them back arose from the necessity of the case, and not from the plaintiff's presumed consent.   It was a duty as well as a right.   If he had driven them north towards their pasture with due care, one of them might have strayed in another direction, and been killed by a locomotive on the defendants' road.   Whether the defendants would have been bound to fence against them while Glover was carefully doing what was necessary to be done to get them out of his field, is a question that need not be considered.   If, under such circumstances, his neglect of the fencing duty he owed to the plaintiff would impose upon the defendants a fencing duty that would aid him in avoiding some of the consequences of his own fault, the creation or transfer of fencing obligation in such a case would not sustain this action.   Instead of driving the cattle back, Glover put them in his barnyard about noon, kept them there about half a day, turned them into the highway between sundown and dark, and drove them westerly in the highway across the defendants' road, and then northerly in the highway towards the plaintiff's house.   It does not appear that he exercised due care, or that it was necessary for him to put them in his yard, or keep them there about half a day, or turn them into the highway between sundown and dark, or drive them towards the plaintiff's house.   On the way one of them, an ox, escaped. Returning home after dark, Glover looked for the lost animal, but did not find it.   While in the plaintiff's constructive, but in no one's actual, possession, it wandered from the highway across Glover's land to the defendants' road, where it was killed in the night by a locomotive, without any fault in the engineer or fireman.   Where

it passed from the highway across Glover's land to the railroad there was no fence.

The case does not raise the question whether the defendants would have been bound to fence against the ox if it had been in the custody of Glover as bailee until it entered the railroad, and the fact had been found that he was properly exercising a right derived from necessity. The cause of action alleged in the declaration did not accrue from Glover's intervention, followed by his abandonment of the duty he undertook, properly or improperly, to perform. *Noyes* v. *Colby*, 30 N. H. 143; *Giles* v. *Railroad*, 55 N. H. 552, 553, 556. The defendants were not bound to fence against the animal left by Glover to run at large in the highway, and roving thence on Glover's land without the consent or knowledge of Glover or of the plaintiff. Where it entered the railroad the plaintiff was not an adjoining owner, and had not the rights of such an owner.

The plaintiff, finding the ox where it had been killed, notified the defendants, and demanded compensation for his loss. The defendants' section-men, finding the ox dead and very much swollen, skinned and buried it, and informed the plaintiff of what they had done. By direction of the road-master they sold the skin, and deposited the money ($6) in the hands of a proper officer of the company, where it remains. By leaving the carcass to become a nuisance on the defendants' premises, the plaintiff compelled them to bury it. They were not bound to remove or sell the hide. Their removal and sale of it after the plaintiff abandoned it was lawful. The proceeds of the sale are to be disposed of on equitable principles, but not in this action of tort, which the plaintiff cannot maintain. *Hoit* v. *Stratton Mills*, 54 N. H. 109, 116.

*Judgment for the defendants.*

BINGHAM, J., did not sit: the others concurred.