CARL DEMETZ, Appellant, v. HENRY C. BENTON, Respondent.

**Kansas City Court of Appeals, April 15, 1889.**

1. **Appellate Practice :** OBJECTIONS TO EVIDENCE MUST BE PRE-SERVED IN BILL OF EXCEPTIONS. If a party wishes to have the action of the trial court in admitting evidence against his objections reviewed in the appellate court he must preserve such objections by his bill of exceptions.

2. **Practice :** COMMON FAULT IN INSTRUCTIONS. Though plaintiff's action be grounded on negligence, yet he cannot complain that defendant's instructions "ignore any question of negligence," when in none of the instructions asked and given in his behalf is that question submitted to the jury, and he cannot complain of an instruction not inconsistent with the theory of his own.

3. **Fences :** LAW AS TO. It is the law of this state that a party must fence his field with a lawful fence before he can complain of damage done him by the animals of others.

4. ———— : DIVISION FENCE IN FACT AND IN LAW : MAINTENANCE OF. If a party's fence is a division fence in fact, he can, at his option, proceed at any time to have it made a statutory division fence, but while he prefers to be the exclusive owner, he must, under the obligations attaching to such ownership, maintain such fence.

*Appeal from the Clinton Circuit Court.*—HON. J. M. SANDUSKY, Judge.

AFFIRMED.

*William Henry,* for appellant.

(1) At common law it was the duty of every man to restrain his cattle within the limits of his own inclosure ; and for an injury resulting from disease communicated by them while trespassing upon the lands of others, the owner was as much bound as if he had voluntarily permitted them to go at large ( Addison on

Torts, 459 ; Cooley on Torts, 337 ) ; and under our special stock law the same rule applies. *Bradford v. Floyd*, 80 Mo. 207. (2) And the fence between the premises of plaintiff and defendant not appearing to be made a partition fence under section 5656 of the Revised Statutes, and it not being an outside fence, leaving the relations of the parties such, that their rights must be determined by the common law, even though our special stock laws were not in force ; for the general provisions of our inclosure law only apply to exterior fences. *Reddick v. Newburn*, 76 Mo. 423. (3) Besides, domestic animals which have an infectious or contagious disease become a nuisance when the care and management of them by their owners is such as to expose the domestic animals of others to the infection or contagion. Cooley on Torts, 608 ; *Hite v. Blandford*, 45 Ill. 9. (4) And, moreover, under the rule that every one is bound to so use his own property and rights as not to interfere with or injure others in the use of theirs, the conduct of defendant amounts to negligence, and he is liable on that ground. *Fisher v. Clark*, 41 Barb. 329 ; Cooley on Torts, 608.

*Thos. J. Porter*, for respondent.

(1) Appellant's first point is that "at common law it was the duty of every man to restrain his cattle within the limits of his own inclosure." Conceding this, there is nothing in the record showing that the rule has any application to this case, as it does not appear that the special stock law was in force in Clinton county. *Berkshire v. Railroad*, 28 Mo. App. 225. (2) It does not appear by the record that the fence through which defendant's hogs entered upon plaintiff's premises was not a statutory fence. D. H. Marette testifies that the fence was his, and that plaintiff, who was his tenant, agreed with him to keep it in repair. There is no evidence that defendant was bound to repair the fence, and

Demetz v. Benton.

it is not perceived on what principle plaintiff can recover damages occasioned by his own neglect, even if there was no privity of contract between him and defendant. (3) The defendant cannot be made liable for damages because of the fact that he placed his hogs, though diseased, in his own pasture. He might have been liable if he had not restrained them, knowing them to be afflicted with a contagious disease, certainly not for restraining them upon his own premises. *Fisher v. Clark*, 41 Barb. ( N. Y.) 329 ; *Mills v. Railroad*, 41 N. Y. 619. (4) If the fourth instruction was objectionable, as claimed by appellant, the objection is answered by the instructions given for the plaintiff. The fact alone that the defendant placed his hogs on the premises adjoining the plaintiff's premises would not authorize a recovery ; but the plaintiff's second instruction gave him the benefit of more than the law, as it ignored the questions as to whether the defendant knew his hogs were diseased or that the disease was contagious, and the question of negligence in suffering them to escape on the plaintiff's premises. Taken together, the instructions are favorable to the plaintiff.

SMITH, P. J.—The substantive cause of action stated in the plaintiff's petition is, that the defendant, who was the owner of a certain number of hogs, which he knew were infected with a fatal and contagious disease, negligently placed them so as to communicate the said disease to the hogs of the plaintiff, and from which some forty-nine of them died. The answer denied this. There was evidence introduced tending to show that the defendant was the owner of a twenty-acre enclosed lot, in the southeast corner of which was a corral, or feed lot. The latter was separated from the pasture of the plaintiff by a fence owned by the plaintiff. The plaintiff occupied the premises, of which said pasture

was a part, as tenant of another; that plaintiff's hogs ran in his said pasture, in which he also had a feed pen, which was about a quarter of a mile from defendant's corral and feed pen; that the defendant was feeding some mules and horses in his said corral and placed therein some shoats "to clean up after them." The shoats were apparently healthy and sound when placed there. Afterwards some of them became sick and died of what was supposed to be hog cholera; that while the shoats were confined in said corral, the mules, on one occasion, broke down the gate and the shoats escaped into the twenty-acre pasture lot, and from there they passed through the plaintiff's fence into his pasture and mingled with his hogs. The plaintiff's fence was not shown to have been a lawful fence, or hog-proof. While defendant's shoats were sick and confined in the corral, one of the plaintiff's hogs broke through the plaintiff's fence and entered defendant's corral, and there mingled with his sick shoats. There was no evidence, whatever, tending to show that the defendant knew, or had cause to know, that his shoats were infected with a contagion when he placed them in his feed lot, or corral, nor that the plaintiff had hogs running in the adjoining pasture, nor that the mules and hogs escaped from the corral by reason of the negligence of defendant in any particular.

The plaintiff, in the month preceding the one in which defendant placed said shoats in his corral, had cast suspicion upon the health of his own hogs by administering to them large doses of carbolic acid and stating to witness Green and others that his hogs had cholera.

As to whether the plaintiff's hogs were infected with the fatal contagion by defendant's hogs, is by no means certain, though it is conceded they died of that ailment.

Demetz v. Benton.

The court, at the instance of the plaintiff, declared the law to be : (1) The court instructs the jury that, if they believe, from the evidence, that defendant knew his hogs were infected with a contagious disease, and permitted them to stray from his premises to plaintiff's premises, while they were so diseased, and mingle with plaintiff's hogs, and communicate the said disease to plaintiff's hogs ; and that plaintiff's hogs took said disease by reason of defendant's hogs commingling with them, and from said cause died, or became worthless, then the jury will find for the plaintiff. (2) If the jury believe, from the evidence, that defendant's hogs were infected with the disease commonly called hog cholera, and believe that said disease is contagious, and believe that defendant suffered his said diseased hogs, or any of them, to escape from his premises onto the plaintiff's premises, where plaintiff's hogs were , and believe that, by reason of said hogs so escaping to plaintiff's premises, said disease was communicated from defendant's hogs to plaintiff's hogs, by reason whereof they died, or were rendered worthless, then the jury will find for plaintiff the amount of injury so sustained, not exceeding the amount sued for, which is five hundred dollars.

The court instructed the jury for defendant, as follows :

" 1. If the evidence fails to satisfy the jury that the disease known as hog cholera is contagious, they will find for the defendant."

" 2. If the evidence fails to satisfy the jury that the disease was communicated to plaintiff's hogs by defendant's hogs, by reason of defendant's hogs escaping upon plaintiff's premises, they will find for the defendant."

" 3. If the plaintiff's hogs contracted the disease known as hog cholera from defendant's hogs by escaping from plaintiff's premises, to defendant's premises, the jury will find for defendant."

"4. The jury are instructed that the defendant had a right to place his hogs on the premises adjoining the plaintiff's premises, notwithstanding they were diseased with the disease commonly known as hog cholera ; and the plaintiff cannot, from that fact alone, recover of the defendant damages sustained by reason of plaintiff's hogs becoming infected and dying in consequence thereof."

"5. The plaintiff cannot recover of the defendant damages resulting from defendant's hogs escaping from defendant's premises upon the premises of plaintiff, through a fence which it was the duty of the plaintiff to keep in repair, by virtue of an agreement or understanding between defendant and plaintiff, or plaintiff's landlord, Marette, to that effect."

The verdict of the jury was for the defendant, and after an unsuccessful motion to set aside the same, judgment was entered thereon, and from which the plaintiff appealed to this court.

I.    Plaintiff complains that the circuit court admitted over his objections illegal and improper evidence.

But such objections of the plaintiff were not preserved in his bill of exceptions and we must presume that the circuit court correctly overruled the same. If a party desires to have the action of a trial court in admitting evidence against his objections reviewed here he must preserve such objections by his bill of exceptions. *Margrave et al. v. Ausmuss et al.*, 51 Mo. 561 ; *Bank v. Westlake*, 21 Mo. App. 569

II.    The second ground of the plaintiff's appeal is that the defendants instructions "ignore any question of negligence." We should be inclined to regard this objection as fatal were it not that the plaintiff grounds his cause of action upon the negligence of the defendant, and yet in none of the instructions asked and given in his behalf is that question submitted to the triers of the facts for their consideration.

It is now the well-settled practice in the appellate courts of this state that a party cannot complain of error in instructions given at the instance of the adversary party, if those given at his request contain a similar error. *Holmes v. Braidwood*, 82 Mo. 610; *Thorpe v. Railroad*, 89 Mo. 650.

The defendant's third instruction is not inconsistent with the theory of those given for plaintiff. If the jury, as they probably did, found for the defendant upon this theory it is difficult to discover any reason for disturbing the judgment on that account.

The plaintiff assails the defendant's fifth instruction on the ground that there was no evidence on which to base it.

We think otherwise. The evidence satisfactorily shows that the fence separating the pasture of the defendant from that of the plaintiff was not a division fence within the meaning of the statute, but was a fence belonging to the plaintiff. It was exclusively under his control as the tenant of his landlord Marette. There was no pretense that it was a statutory fence. The inference it quite clear that it was not. It is the law of this state that a party must fence his field with a lawful fence before he can complain of damage done him by the animals of others. *Canefox v. Crenshaw*, 24 Mo. 199.

If such was the duty of plaintiff and he neglected to protect himself by a lawful fence and in consequence thereof the defendant's hogs strayed into his pasture and did the mischief complained of, the damage would be attributable to his own fault, and he would have no remedy.

If the plaintiff's fence was a division fence in fact and not in law he could at his option have, at any time proceeded under the statute and made it a statutory division fence. He preferred to be the exclusive owner

of the fence and to rest under the obligations attaching to such ownership.

The agreement to repair imposed no duty on the plaintiff other than that imposed by law in so far as the same affects the relations of the parties in respect to the subject-matter of this suit. The finding of the jury in this regard was right, though subject possibly to the objection as being for a wrong reason, and that this did not operate to prejudice the rights of the plaintiff is no ground for reversal.

The plaintiff in his brief cites us to Cooley on Torts, 608, to sustain his contention, where it will be seen that author states the law to be that when domestic animals which have an infectious disease become a nuisance when the care and management of them by their owners is such as to expose the domestic animals of others to the infection, the question of liability is one of negligence and the want of good faith. No such theory nor was the converse thereof submitted to the jury by any instruction and hence the principle cannot be invoked.

The case of *Reddick v. Newman*, 76 Mo. 423, also cited by plaintiff, does not support the plaintiff's position for the reason that the "partition fence," there referred to, was a statutory division fence. The case in its facts is wholly wanting in analogy to this. We have carefully considered the evidence and have reached the conclusion that the verdict of the jury was for the right party.

The judgment of the circuit court is affirmed. All concur.