No. 84.—JOSEPH CATCHING, plaintiff in error, *vs.* DAVID S. TERRELL, defendant in error.

[1.] A Court of Equity will not interfere to restrain a trespass by injunction, unless it be destructive to the very nature and substance of the estate, or unless irremediable mischief would ensue unless immediate relief was granted; or where, from the difficulty of the proof, or some other peculiar circumstance, this conservative remedy is imperatively demanded.

[2.] The throwing down of fences, and the letting in of cattle upon the growing crop, does not authorize a Court of Equity to interfere—the injury being susceptible of perfect pecuniary compensation.

[3.] The mere allegation by a complainant, that the legal remedy is too tardy, or that irreparable mischief will ensue, is not sufficient; but to entitle the party to an injunction, the facts must be stated, to show that the apprehension of injury is well founded.

In Equity, in Greene Superior Court. Decision by Judge JOHNSON, September Term, 1851.

David S. Terrell filed his bill in Equity, alleging that he was the owner of, and in possession of a tract of land, adjoining one of Joseph Catching's ; that he cultivated his land, all of which was necessarily kept in tillage ; that Catching, on divers days, had thrown down the fences of the complainant, thereby admitting stock, and otherwise destroying the crops of complainant ; that his land was at that time sowed down in wheat, upon which complainant depended for a support; that the remedy at Law was too uncertain, slow and inadequate ; that Catching does not pretend to have title to the lands, and yet threatens to continue his trespasses ; that said Catching applied to the Superior Court of Greene County, asking that a private way might be opened through the enclosed lands of complainant; that the Jury assessed the damages at sixty dollars, which the Inferior Court refused to pay out of the County funds, and Catching refused to pay the same out of his own funds ; that after Catching refused to pay the damages, the Inferior Court revoked the order opening the way through the enclosed lands, and passed an order

requiring complainant at his own expense to open a way, avoiding his enclosed lands, for the use of said Catching, with which order the complainant complied; that Catching, nevertheless, still continues, and threatens to continue to pull down the fences of complainant, and pass through his fields. The prayer was for an injunction and general relief.

Catching, by his answer, admitted the title of complainant to the land, and that the same was in cultivation. The answer alleged, that from the earliest settlement of the County of Greene, there had been a public road leading to a ferry in the fork of the Appalachee and Oconee rivers, and passing through the plantation of the complainant; that this road was once much travelled by the public; the ferry was afterwards discontinued, and the road used only by the defendant, who owned the land lying in the fork, and his mother; that complainant's land over which the road passed, was for a long time an old field, grown up in pines; that when complainant enclosed this old field, he asked defendant to permit him to place gates at each end, and thus relieve him from keeping up a lane fence, to which defendant consented; that complainant kept up the gates for a while, and then out of pure malice removed them and built high fences across the road, barricading them with sapplings, briers, &c. The defendant admitted that he had pulled down these fences and left them down, and had told complainant that he intended to continue to do so; that the public road had been in use over the land, for more than forty years, and that the fence he pulled down was across this road.

Upon the coming in of the answer, a motion was made to dissolve the injunction, on the grounds:

1st. That the bill did not make a case which authorized an injunction.

2d. That the answer swore off the equity of the bill.

The Court refused the motion, and this decision is assigned as error.

Conn, for plaintiff in error.

---

Catching *vs.* Terrell.

---

MERIWETHER, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

The bill contains a charge of trespass by entering repeatedly upon the lands of the plaintiff, and throwing down his fences, so that stock of all kinds had access to the fields, and destroyed the growing crops thereon ; that that portion of the plantation which is more immediately exposed, is sown down in wheat, for the purpose of raising food for the support of plaintiff's family, and the loss of which, it is alleged, would subject the plaintiff to great inconvenience and irreparable injury.

[1.] Is this such a trespass as a Court of Equity ought to interfere, by injunction, to restrain ? We think not. And for the reason, that it is one for which the ordinary legal remedy in a Court of Law, can afford adequate satisfaction. It is the policy, as well as the uniform practice of the Courts, never to introduce the Chancery remedy, or a substitute for the Common Law redress, by action and assessment of damages by the Jury, except in strong and aggravated cases, and where the mischief extends to the very substance and value of the estate ; or where the delay would be ruinous, or just compensation rendered impracticable, from the uncertainty of the proof.

[2.] None of these reasons exist for drawing this case within the cognizance of Chancery. Suppose the plaintiff be prevented entirely from making a crop, the worst that can befal him, it is not pretended but that the defendant is abundantly able to respond in money for this deprivation, even if the plaintiff were compelled to employ hands to watch this road fence continually, to put it up as fast as it is pulled down, the hire of these hands, together with smart money, might be sufficiently secured by the verdict of the Jury. For this can be so modeled as to make it adequate as a check as well as a recompense.

Chancellor *Kent*, in the leading case upon the subject, of *Jerome vs. Ross*, (7 *Johns. Ch. R.* 314,) puts the identical case under consideration, as one which will be left to pecuniary compensation. He says: "a troublesome man may harass his

Catching *vs.* Terrell.

neighbor, by throwing down his fences and turning cattle upon his grounds, or by passing over them, or otherwise annoying him; but it is to be presumed that repeated recoveries for damages, with the punishment of costs and such smart money as a Jury would naturally give, would soon effectually correct any such disposition. At any rate I do not know that a Court of Equity has ever interfered merely to correct such a practice ; and it actually would require very strong evidence of the inefficacy of the ordinary legal remedies for remuneration, as well as of correction, before this Court would venture to assume a jurisdiction hitherto unknown."

Believing therefore, as we do, that the peculiar circumstances disclosed in this bill do not warrant, much less imperatively demand, the conservative remedy which is invoked by the plaintiff, we cannot sustain the injunction. Had it been stated that there was an orchard of fruit trees, or of mulberries for the feeding of the silk worm, which was exposed to the depredation of the stock let into this plantation by reason of the trespass complained of, our conclusion might have been different.

[3.] It is charged in the bill, that the legal remedy is too tardy, and that irreparable mischief will ensue if the relief sought is not granted. I would remark, that the mere allegation of a complainant, that irremediable damage will ensue, is not sufficient; but to entitle the party to an injunction, the facts must be set forth to show that the apprehension of injury is well founded.

It is the opinion of this Court, that the Circuit Judge erred in overruling the motion to dissolve the injunction ; and that the judgment below be reversed, upon the ground that the trespass complained of, was not of such a character as to authorize the interposition of a Court of Equity, to restrain its commission.