IN

# THE SUPREME COURT

OF

## THE STATE OF MISSOURI,

OCTOBER TERM, 1860, AT ST. LOUIS.

———————•◆•———————

HANNIBAL AND ST. JOSEPH RAILROAD COMPANY, Plaintiff in Error, v. SHACKLETT, Defendant in Error.

1. The exemption of the stock of the Hannibal and St. Joseph Railroad Company from all state and county taxes, contained in the original charter of said company, is modified by the acceptance on the part of said company of the act of September 20, 1852; (Railroad Laws, p. 115; Sess. Acts, 1853, p. 15;) and the corporate property of said company, although representing the stock, is subject to taxation at the time and in the manner specifically provided for in the third section of said last mentioned act.
2. The road-bed, machinery and depots of the Hannibal and St. Joseph Railroad, and the other property used by said company in operating its road, are to be considered as part of and represented by the capital stock of said company, and are not liable to taxation under that provision of the general revenue law subjecting to taxation "all property owned by incorporated companies over and above their capital stock." (R. C. 1855, p. 1322.)

*Error to Marion Circuit Court.*

This was a suit brought by the Hannibal and St. Joseph Railroad Company to recover back the sum of six hundred and fifteen dollars and eighty-six cents paid by the plaintiff

to the defendant Shacklett as tax collector of Marion county, being the amount of state, county and asylum taxes levied and assessed on the property, real and personal, belonging to plaintiff in Marion county in the year 1858. The plaintiff sets forth in its petition the various pieces and kind of property taxed, consisting of the road-bed, depot, machine shops, machinery and rolling stock, &c., and the assessed value of each and the amount of the taxes assessed; that all the property taxed was used and necessary to operate its road; that said property was exempt from taxation; that the assessment was illegal and void; that the collector demanded said taxes of plaintiff, and upon plaintiff's refusal, levied upon and seized personal property of plaintiff and was about to sell to make the tax; that to prevent a sale plaintiff paid said tax under protest.

The court sustained a demurrer to this petition.

*Leonard, Lamb* and *Lakenan,* for plaintiff in error.

I. It is manifest from the provisions of the revenue act that all corporate property shall be taxed but once, that none shall be doubly taxed. The road-bed, ties, rails, and other fixtures, together with the rolling stock necessary to the working of the road and actually used for that purpose, form part of the capital stock within the meaning of the provision of the revenue act. The capital stock is not merely the representative of this property, but it is this very property that constitutes the capital stock. (12 Gill & Jo. 117; Gordon v. City of Baltimore, 5 Gill, —; Rome Railroad Co. v. Rome, 14 Georg. 275; The State v. Branniso, 3 Zabr. 485; State v. Bentley, id. 540; State v. Ferris, id. 546.) When the law subjects the stock, *eo nomine,* to taxation, the road-bed and necessary appendages are by construction excepted out of the words of the general law. (B. & P. R. R. Co. v. Harris, 21 Mo. 533; Salem Iron Factory v. Inhabitants of Danvers, 10 Mass. 518; Smith v. Burley, 9 N. H. 427.) All this is upon the principle that the capital stock represents the real and personal property that is

necessarily and permanently employed in carrying on the business for which the company was incorporated. There should be no double taxation.

*Dryden & Lipscomb*, for defendant in error.

I. If plaintiff relies upon any thing in the charter exempting its property from taxation, then the charter should have been pleaded. There is nothing in the charter giving the exemption claimed. It is not exempted by the provision contained in the twenty-fourth section of the charter of the Louisiana and Columbia Railroad Company, to the effect that the "stock of said company shall be exempt from all state and county taxes." This is an exemption from taxes on "stock." This exemption was for the benefit of the stockholders rather than the corporation. This exemption was not, therefore, one of the privileges, rights or immunities conferred by the charter of plaintiff. There is no consideration for the exemption if it existed, and it was subject to repeal. The provisions of the revenue law of 1855 distinguish between *capital stock* and *property* of the corporation.

NAPTON, Judge, delivered the opinion of the court.

The question in this case is whether the property of the Hannibal and St. Joseph Railroad Company in the county of Marion—consisting of the road-bed, depot, cars, locomotives, and all the real and personal property necessary for the operations of the road—is liable to taxation under the general revenue law of the state.

That law, among other objects of taxation, enumerates "shares of stock in banks and other incorporated companies, excepting manufacturing companies, the property of which alone shall be taxed;" and "*all property owned by incorporated companies over and above their capital stock.*" Under this last clause, the assessor of Marion county, under the direction of the county court, assessed the tax in question for state and county purposes.

The charter of this company was granted in 1849. The

act of incorporation adopted the provisions of an act to incorporate the Louisiana and Columbia Railroad, which had been passed by the legislature in 1837. In the twenty-fourth section of this last named act is a clause declaring that "every person who shall cease to be a shareholder shall also cease to be a member of said company; and the *stock of said company shall be exempt from all state and county taxes.*"

In 1852, September 20, an act was passed to give this company the benefit of the donation of lands made by Congress during the same year. The third section of this law is as follows: "In consideration of the grants and privileges herein conferred upon said company, the said company shall, on the first Monday in December of each year, after said road is completed, opened and in operation, and declares a dividend, pay into the treasury of the state a sum of money equal to the amount of the state tax on other real and personal property of like value, for that year, upon the actual value of the road-bed, buildings, machinery, engines, cars and other property of said company, which shall be as a consideration to the state for the execution of the trust reposed in the state by an act of Congress of the United States, approved June 10, 1852, entitled 'An act granting the right of way,' &c.; and for the purpose of ascertaining the value of the same, it shall be the duty of the president of said company, on the first day of February in each year after said road is completed, opened and put in operation, and declares a dividend, to furnish to the auditor of the state a statement under his oath, made before and certified by some officer authorized to administer oaths, the actual value of the road-bed, buildings, machinery, engines, cars and other property of said company; and from said statement so furnished the auditor shall charge said company with the amount appearing to be due the state, according to the statement furnished, as herein required, by the president of said company; and in case said company shall fail to pay into the state treasury, within thirty days after the first day of December in each year, the amount charged against said company as aforesaid,

said company shall forfeit and pay to the state of Missouri, in addition to the sum with which said company stands charged by the auditor, ten per cent. per month on the amount charged to said company; which sum charged against said company, together with the ten per cent. per month hereinbefore specified, may be recovered in the name of the state of Missouri, by civil action, in any court of competent jurisdiction. And should the president of said company fail to make out and furnish to the auditor of the state a statement as herein required, said company shall forfeit and pay to the state ten thousand dollars for each failure, which may be recovered, in the name of the state of Missouri, in any court of competent jurisdiction: *Provided*, that if said company shall fail, for the period of two years after said road shall be completed and put in operation, to declare a dividend, that then said company shall no longer be exempt from the payment of said sum of money in this section required to be paid into the state treasury on the first Monday in December of each year by said company, nor from the forfeitures and penalties in this section imposed." (Railroad Laws, p. 116.)

The act of December 25, 1852—which was passed for the purpose of applying a portion of the same donation of Congress to the Pacific Railroad Company—contains this provision: " The said Pacific Railroad and the said South-western Branch Railroad shall be exempt from taxation respectively until the same shall be completed, opened and in operation, and shall declare a dividend, when the road-bed, buildings, machinery, engines, cars and other property of such completed road, at the actual cash value thereof, shall be subject to taxation at the rate assessed by the state on either real or personal property of like value; and for the purpose of ascertaining the value of the same, it shall be the duty of the president of said company, on the first day of February in each year after such road is completed, opened and put in operation, and declares a dividend, to furnish to the auditor of the state a statement, under his oath, made

before and certified by some officer authorized to administer oaths, of the actual value of the road-bed, buildings, machinery, engines, cars and other property appertaining to said completed road ; and from said statement so furnished the auditor shall charge said company with the amount appearing to be due to the state, according to the statement furnished as herein required by the president of the company ; and in case said company shall fail to pay into the state treasury, within thirty days after the first day of December in each year, the amount charged against said company as aforesaid, said company shall forfeit and pay to the state of Missouri, in addition to the sum with which said company may stand charged by the auditor, ten per cent. per month, after the expiration of said thirty days, on the amount charged to said company ; which sum charged against said company, together with the ten per cent. per month hereinbefore specified, may be recovered in the name of the state of Missouri, by civil action, in any court of competent jurisdiction ; and should the president of said company fail to make out and furnish to the auditor of the state a statement as herein required, said company shall forfeit and pay to the state ten thousand dollars for such failure, which may be recovered, in the name of the state of Missouri, in any court of competent jurisdiction : *Provided,* that if said company shall fail, for the period of two years after said roads respectively shall be completed and put in operation, to declare a dividend, that then said company shall no longer be exempt from the payment of said tax, nor from the forfeitures and penalties in this section imposed." (Railroad Laws, p. 67.)

These sections in the two acts are copied to show the almost entire identity of language employed, with the exception that the last section expressly and in terms exempts the Pacific road from taxation, unless in the mode and at the time specified. It will also be observed, that the proviso to this section calls the amount due *a tax*, whilst the proviso in the section from the act concerning the Hannibal and St. Joseph Railroad does not use this term, but speaks of the

amount as " a sum of money required to be paid into the state treasury ;" and in the body of the section, it is said to be " a consideration to the state for the execution of the trust reposed in the state," &c. These acts were passed at the same session of the legislature—the one in September and the other in December. The act relating to the Pacific Railroad was passed on the 25th of December.

Previously to the passage of these acts there was a provision in the amended charter of the Pacific Railroad Company (Railroad Laws, p. 24) declaring that " the capital stock [of the Pacific Railroad Company], together with all machines, engines, cars, &c., belonging to the company, together with all their works and other property, and all profits, &c., shall be vested in the respective shareholders of the company forever, in proportion to their respective shares," and providing that the same should " be deemed personal estate, and should be exempt from any public charge or tax whatsoever, for the period of five years from the passage of this act." This act was passed March 1, 1851, and the exemption has expired ; but before its expiration—in 1852, as we have seen—the property of this company had been exempted from taxation, except in a mode and at a time particularly specified in the section which we quoted at large from the act of 1852.

The sixth section of the amended charter of the North Missouri Railroad Company (January 7, 1853, Railroad Laws, p. 35) contains precisely the same provision, exempting the capital stock and all the property of the road from taxation for five years, which has been copied from the amended Pacific Railroad charter.

The act to confirm the incorporation of the Cairo and Fulton Railroad Company, &c., passed February 20, 1855, contains the same exemption from taxation to be found in the twelfth section of the act of December 25, 1852, concerning the Pacific road, which has been heretofore copied. The ninth section of the act concerning the Cairo and Fulton Railroad Company (Railroad Laws, p. 57) is almost a literal copy of the twelfth section above referred to, and of course

exempts, beyond all doubt, all the property of this road from taxation, except in the mode pointed out.

The amended charter of the St. Louis and Iron Mountain Railroad Company contains a provision (Railroad Laws, p. 48, § 5,) that the engines, cars, and other property of this road " shall be deemed *a part of the capital stock* of said company," &c. ; and the act incorporating the Platte County Railroad Company declares (Railroad Laws, p. 54, § 19,) that " the stock of said company shall be considered personal property," &c. There is nothing said in the two laws last mentioned concerning the exemption of the property of the companies from taxation.

Recurring to the general revenue law, which provides for taxing " all property owned by incorporated companies *over and above their capital stock*," we propose to consider the proper construction of this provision in reference to the property of the Hannibal and St. Joseph Railroad Company. As the phraseology of the law is obscure, we have referred to the special acts touching the immunities and burthens of this company, as well as those concerning the other leading railroad companies in the state, with a view to reach, if possible, the intent of the legislature. Where an exemption from taxation is claimed by a corporation of property which clearly falls within the descriptive words of the act which imposes the tax, there can be no question that the exemption must be a plain one. The presumption is against the corporation, if the property be such as would be manifestly subject to taxation without a special exemption. But when it is doubtful whether the property proposed to be taxed falls within the terms of description used by the law, it is altogether consistent with the rules of construction to resort to other statutes, more specifically appropriated to the subject, for the purpose of ascertaining the intention of the legislature in the enactments of the general statute.

What description of property was intended to be embraced by the words " all property owned by incorporated companies over and above their capital stock," it must be conceded,

36—VOL. XXX.

is not very plain, especially when made applicable to railroad corporations. The difficulty is not diminished by taking into consideration the additional provision, which enumerates "shares of stock" as another subject of taxation. It is certainly implied that capital stock is to be regarded as property, and that a corporation may have more property than the capital stock represents. It is not designed that the property which is represented by capital stock shall be taxed, but the property which is owned *over and above* the capital stock. How this is to be ascertained, how the assessor is to know what property represents the capital stock, and what property has been obtained by the profits or income arising from the capital, is not pointed out. It is clear that there was no intention of taxing both the capital stock and the property which was over and above the capital stock. It is only the last which is taxed, and the former is expressly exempted.

Confining ourselves entirely to the railroad corporation whose property has in this case been subjected to taxation, without undertaking to give any construction to the law with reference to corporations of a different character, the question is, upon this provision of the general revenue law, whether the road-bed, machinery, depots, and other property used by the company in operating the road, are to be considered as a part of the capital stock of the company. It is undoubtedly not literally the capital stock, taking these words in their usual acceptation. Capital stock, in its strict signification, exists only nominally; the money or property which it represents is the tangible reality. The one is the representative of the other; and if the stock and the property it represents are both taxed, the taxation is double.

The legislature seems to have given what may be termed a legislative interpretation of these words "capital stock," so far as they are applied to the various railroad companies of the state. We find in the charter of the St. Louis and Iron Mountain Railroad Company a declaration that the road-bed, machinery and other property of that company shall be

deemed a part of the capital stock of the company; and in the amended charter of the Pacific Railroad Company the " capital stock, together with all machines, engines," &c., are declared vested in the shareholders forever. Similar declarations are to be found in nearly all the acts incorporating the various railroad companies of the state, although there is nothing of the kind in any act regulating the Hannibal and St. Joseph Railroad Company, so far as we have been able to observe. These sections, however, show the general understanding of the legislature as to the identity of the property of the railroad companies necessary to the operation of their roads, with their capital stock.

But the third section of the act concerning the Hannibal and St. Joseph Railroad Company, passed in 1852, puts the solution of the question involved in this case, we think, beyond controversy. This section is not framed with the care manifested in the corresponding provision of the act of the same session concerning the Pacific Railroad Company. There is no express exemption from taxation of the property of the Hannibal and St. Joseph Railroad Company as there is in the twelfth section of the act concerning the Pacific Railroad Company. But it is difficult to see how the express exemption of the one can be any stronger than the implied exemption of the other, nor can we discover any motive for a discrimination between the two companies. At the expiration of two years from the completion of the Hannibal and St. Joseph Railroad, the road-bed, machinery and all the property of this company, employed in the operations of the road, are expressly subjected to a tax, the amount of which is to be regulated by the general revenue law of the state, and the mode of its assessment and collection is specifically pointed out. If a failure to pay the tax occurs, a heavy per cent. is added to the amount, and if the property is not valued as directed, and the valuation furnished to the auditor, a penalty of ten thousand dollars is inflicted on the company.

When the legislature declare that at a certain period

property shall be taxed, it is in effect a declaration that prior to the designated time it shall not be taxed. Is it at all consistent with any rational probabilities, that when the legislature were framing particular provisions looking to the taxation of this company at a period subsequent to the date of the enactment, they also intended that the same property then prospectively taxed, should be subject to the same taxation and for the same purposes in the various counties through which the road passed? Does not the whole provision imply, as strongly as words can do, that the property enumerated was not within the general revenue law? If it was, the entire section is a piece of folly, an unmeaning superfluity; unless, indeed, it could be inferred that the object was to tax the same property in two modes—one by the assessors and collectors of the several counties—the other through the agency of the state auditor and the officers of the company. But this hypothesis is just as inconsistent with the tenor and spirit of the enactment as the other. A double taxation on the same property is manifestly not intended either by this enactment or by the provisions of the general revenue law. A double taxation is an absurdity, at least, where the proceeds of the tax go in one direction, since it is in effect an increased rate of taxation merely, and could be more plainly and simply expressed by making it so in terms.

The exemption of the stock of the Hannibal and St. Joseph Railroad Company from all state and county taxes, contained in the charter of 1849, must be considered as modified by the acceptance on the part of the company of the act of September 20, 1852, and their corporate property (although representing the stock) is subject to taxation at the time and in the manner specifically provided for in the last mentioned act.

The judgment is reversed and the cause remanded. The other judges concur.