LEMUEL KIMPLE, Appellee, v. PHILLIP SCHAFER and MYRTLE SCHAFER, Appellants.

**Domestic animals:** TRESPASS: INJUNCTION. The owners of domestic
1    animals may be restrained from permitting them to trespass upon
the land of another.

**Same:** ANIMALS: RUNNING AT LARGE: COMMON LAW: APPLICABIL-
2    ITY. The rules of the common law requiring the owners of domes-
tic, animals to restrain and keep them upon their own premises are
not applicable to the conditions of the people of this state.

**Same:** CHICKENS RUNNING AT LARGE: INJUNCTION. It is the universal
3    custom to allow chickens to run at large in the rural districts, and
in the absence of any statute forbidding the same an owner keeping
chickens in the country is not bound to restrain them, so as to pre-
vent their trespassing upon the land of another.

WEAVER, J., dissenting.

*Appeal from Wayne District Court.*—HON. THOMAS L. MAX-
WELL, Judge.

FRIDAY, OCTOBER 24, 1913.

SUIT in equity to compel defendants to restrain and control their chickens, so as to prevent them from trespassing upon plaintiff's land. The trial court granted the relief prayed, and defendants appeal.—*Reversed.*

*Postun & Murrow,* for appellants.

*Miles & Steele,* for appellee.

DEEMER, J.—Plaintiff and defendants own and occupy adjoining farms, separated only by a public highway. Defendants' dwelling house and improvements are on this highway. Immediately east and across the road is plaintiff's land, and in the year 1911 he had sown a part of it in oats. At that time, defendants kept a large number (something like 200) of chickens about their yards and premises, and these were permitted to run at large, not only upon their own land, but also upon the public highway. Plaintiff alleges, and the testimony tends to show, that quite a number of these fowls went upon plaintiff's land which he had seeded to oats and ate a large amount of the seed, which plaintiff had planted, to such an extent as to cause him to resow a part of the land; not only once, but twice or thrice. He also alleged that notwithstanding his crop was deficient and badly injured. He further averred that he requested defendants to restrain their chickens and keep them off his land, but that they refused to do so and stated that they did not intend to make any efforts in that direction. He brought this action for a mandatory injunction to compel defendants to restrain and keep their fowls from trespassing upon his land. After a trial upon the merits, the lower court granted the relief asked, permanently enjoining defendants from permitting or allowing any chickens or poultry owned or controlled by them from going on plaintiff's premises. Defendants appeal from this decree.

This appeal involves the duties of an owner of, what Milton styles, the "tame villatic fowl," or in common parlance the "Iowa hen." Plaintiff says that the owner must clip her wings or otherwise imprison and keep her upon his own domain; and that she has no right to take even her daily dust bath upon the country highway, or to stubbornly cross the roads in front of a rapidly approaching vehicle. On the other hand, defendants say that outside of cities and towns chickens are free commoners, and that an owner of improved or cultivated land must fence against them. They also assert that plaintiff has no remedy, because his land is not inclosed by a lawful fence and for the further reason that, if he has a remedy, it is to impound the trespassing animals, or to sue at law for the damages done, and that in no event is plaintiff entitled to any relief because his hands are foul in that he, too, owns chickens which he permits to roam at will. The questions thus presented are really serious in character, for the poultry industry is an important one in this state and it is of vital importance to know whether the owner must restrain his fowls, or an adjoining owner of improved and cultivated land must fence against them.

I. Whatever the decision, some hardship must result; and it is well, perhaps, that the question is presented at this time in order that the law may be settled. Strange as it may seem, there appears to be no decision exactly in point. The nearest approach to it is our own case of *Keil v. Wright*, 135 Iowa, 383, also reported in 13 L. R. A. (N. S.), 184. The diligent annotators of that series of selected cases found no other upon the proposition involved. The case is also reported in 14 Am. & Eng. Ann. Cas., 549, but the industrious editors of that series found nothing theretofore reported directly in point. Upon one proposition the case is important and decisive of one of the questions raised on this appeal. It squarely decides that a permanent injunction will lie to restrain domestic animals from trespassing upon the lands of another, and this rule

1. DOMESTIC ANIMALS: trespass: injunction.

seems to have support in *Ellis v. Forest Ass'n*, 69 N. H. 386 (41 Atl. 856, 42 L. R. A. 570) ; *Musselshell Co. v. Woolfolk*, 34 Mont. 126 (85 Pac. 874) ; *Strawberry Co. v. Chipman*, 13 Utah, 454 (45 Pac. 348) ; *Tantlinger v. Sullivan*, 80 Iowa, 218, *Martin v. Sheep Co.*, 12 Wyo. 432 (76 Pac. 571, 78 Pac. 1093). *Contra: Jerome v. Ross*, 7 Johns. Ch. (N. Y.) 315, 11 Am. Dec. 484 (opinion by Chancellor Kent) ; *Catching v. Terrell*, 10 Ga. 576.

II. It is conceded that, at common law, owners of domestic animals were required to keep them within their own close, and if they failed to do so, they were liable in trespass, and this rule had special application to adjoining landowners, unless there was some agreement between them, either express or implied, to the contrary. But Blackstone says that this rule did not apply to dogs, cats, rabbits, and all animals *feræ naturæ*. 3 Black. Com. 7. It has been held, however, at common law that trespassing chickens could be impounded. *State v. Neal*, 120 N. C. 613 (27 S. E. 81, 58 Am. St. Rep. 810). In a very early English case, it seems to have been held that greyhounds or ferrets chasing and killing rabbits in a warren might be distrained damage feasant. 1 Year Book, 1 Edw. II, 18, pl. 2. See, also, *Boden v. Roscoe*, 1 Q. B. 608; *Bunch v. Kennington*, 1 Q. B. 679 (41 E. C. L. 726). But see *Brown v. Giles*, 12 E. C. L. 79; *Woolf v. Chalker*, 31 Conn. 121 (81 Am. Dec. 175). This rule of the common law, requiring an owner to keep and restrain domestic animals upon his own premises, has been held inapplicable to the habits and conditions of the people in many of our states, especially Western and Middle Western ones. See *Mobile v. Williams*, 53 Ala. 595; *Little Rock v. Finley*, 37 Ark. 562; *Cincinnati R. Co. v. Waterson*, 4 Ohio St. 424; *Pace v. Potter*, 85 Tex. 473 (22 S. W. 300) ; *Merritt v. Hill*, 104 Cal. 184 (37 Pac. 893) ; *Gorman v. Railroad Co.*, 26 Mo. 441 (72 Am. Dec. 220) ; *Chase v. Chase*, 15 Nev. 259; *Nuckolls v. Gaut*, 12 Colo. 361 (21 Pac. 41). At a very early day we adopted this rule, and it

2. SAME: animals running at large : common law : applicability.

has been adhered to ever since, save as the Legislature has made provision to the contrary. *Wagner v. Bissell,* 3 Iowa, 396; *Syford v. Shriver,* 61 Iowa, 155; *Hallock v. Hughes,* 42 Iowa, 516; *Little v. McGuire,* 38 Iowa, 560; s. c., 43 Iowa, 447; *Harrison v. Adamson,* 76 Iowa, 337; *Frazier v. Nortinus,* 34 Iowa, 82; *Russell v. Hanley,* 20 Iowa, 219; *Alger v. Railroad Co.,* 10 Iowa, 268.

The Legislature has authority to change this rule, and it has done so in this state as to many kinds of domestic animals; but, as to chickens, the only provision we find in the statutes

3. SAME: chickens running at large: injunction. is one giving to cities and towns the right to restrain and regulate the running at large of swine, sheep, and fowls within the limits of a corporation and authorizing the distraint and impounding thereof. See Code, section 706. The other provisions found in chapter 3 of title 12 of the Code have no reference to poultry. Section 2311, in giving a definition of trespassing animals, says that it means those unlawfully upon land or running at large, contrary to law or police regulations. By no stretch of the imagination may any of the sections found in this chapter be held to refer to chickens. These provisions of the Code are significant in that the only attempt made by the Legislature to regulate the running at large of poultry, turkeys, chickens, ducks, geese, guinea hens or other fowls coming under that designation, refers only to cities or towns, thus indicating that in the country districts such animals are free commoners, and he who would be protected from their ravages must fence or protect his land against them. We should not shut our eyes to the fact that from the very beginning of the state, even in its territorial stage, chickens have been what may properly be described as free commoners. Save for purposes of breeding, it has never been the custom in rural districts for the owner to restrain his chickens. They, with turkeys, geese, and ducks, have been permitted to roam at will, and such practice is vital to the life and health of such animals. Unless permitted, the expense of building fences to

prevent their escape would be well-nigh ruinous of the industry. There is no statute which requires an owner to restrain them or to prevent them running at large, and no one, we think, would claim that in going upon the public highways of the state they are trespassers. It is very much easier to fence poultry out than it is to fence it in, and until the Legislature makes it obligatory upon the owner to restrain his chickens, turkeys, ducks, geese, peacocks, and guinea hens and keep them from running at large, we are not disposed to adopt a rule which will require him to do so. The customs and habits of our people, with reference to the care of poultry, are so well established and so thoroughly understood that we think all would be shocked, to say the least, by a pronouncement from this court that they must fence them in, and that in the event any of them flew out and alighted on a neighbor's field the owner was liable in trespass. Again, in the absence of statute, it does not appear to us to be just to enter a decree of mandatory injunction against an owner of chickens, permanently restraining him from permitting them to escape from his inclosure under penalty of contempt for violation of an injunction.

The case, as we have said, is largely one of first impression, although we find some analogous cases to which reference will be made. In *Buford v. Houtz*, 133 U. S. 320 (10 S. C. 305, 33 L. Ed. 618), the Supreme Court of the United States held that a landowner of parcels of land scattered through a large body of the public domain was not entitled to an injunction to restrain a cattle owner from trespassing upon his lands. In that case it was said that the common law of England was not applicable to our Western States. The Supreme Court of the United States quoted with approval the following from *Seeley v. Peters*, 5 Gilman (Ill.) 142:

Perhaps there is no principle of the common law so inapplicable to the condition of our country and people as the one which is sought to be enforced now for the first time since the settlement of the state. It has been the custom in Illinois, so

long that the memory of man runneth not to the contrary, for the owners of stock to suffer them to run at large. Settlers have located themselves continguous to prairies for the very purpose of getting the benefit of the range. The right of all to pasture their cattle upon uninclosed ground is universally conceded. No man has questioned this right, although hundreds of cases must have occurred where the owners of cattle have escaped the payment of damages on account of the insufficiency of the fences through which their stock have broken, and never till now has the common-law rule that the owner of cattle is bound to fence them up been supposed to prevail or to be applicable to our condition. The universal understanding of all classes of the community, upon which they have acted by inclosing their crops and letting their cattle run at large, is entitled to no little consideration in determining what the law is; and we should feel inclined to hold, independent of any statutes upon the subject, on account of the inapplicability of the common-law rule to the conditions and circumstances of our people, that it does not and never has prevailed in Illinois. But it is unnecessary to assume that ground in this case. The legislation upon this subject, from the time when we were a part of the Indiana territory down to the last law contained in the Revised Statutes, clearly shows that the Legislature never supposed that this rule of the common law prevailed in Illinois, or intended that it should.

The same rule was announced in *Buford v. Houtz,* 5 Utah, 591 (18 Pac. 633) ; also, in *McGinnis v. Friedman,* 2 Idaho (Hasb.) 393 (17 Pac. 635) ; applying the same rule to sheep : *Martin v. Sheep Co.,* 12 Wyo. 432 (76 Pac. 571, 78 Pac. 1093) ; *Healy v. Smith,* 14 Wyo. 263 (83 Pac. 583, 116 Am. St. Rep. 1004) ; *State v. Johnson,* 7 Wyo. 512 (54 Pac. 502).

The *Keil* case, *supra,* upon which plaintiff places his chief reliance, does not decide the proposition here involved; on the contrary, the court expressly refused to decide the question and reserved the point for further argument, when properly presented.

· In view of the known habits and customs of our people from the beginning of the state, of the fact that our courts

have expressly refused to adopt the common-law rule as to domestic animals, and of the legislation which has been passed with reference to certain kinds of animals, omitting all reference to poultry or fowls, save as it gave municipalities the power to restrain the same from running at large, we are disposed to and do hold that plaintiff is not entitled to the relief asked and that his petition should have been dismissed.

The decree therefore is reversed, and the cause remanded for one in harmony with this opinion.—*Reversed* and *Remanded.*

WEAVER, C. J., dissents.