R. M. EVANS, Appellant, v. ED. McLALIN and ANNA McLALIN, Respondents.

Springfield Court of Appeals, April 14, 1915.

1. **COMMON LAW: Adoption of: Statutory Provisions.** Only so much of the common law of England has been adopted in this State as is of general nature and not local to that kingdom, and this does not include the provisions of the common law as to restraining domestic animals and fowls from running at large. (Sec. 8047, R. S. 1909.)

2. **CHICKENS: Running at Large: Trespass: Liability of Owner.** In the absence of a statute or municipal ordinance an owner of chickens is not liable for damages on account of their trespass on the unenclosed land of another, but the owner of such land must protect same from trespass by fences.

3. ———: ———: **Trespass.** It is a circumstance to be considered in determining liability at common law for trespass by chickens on unenclosed lands that no suit for damages on account of such trespass has ever been before the courts.

4. **STATUTES: Legislative Intent.** A legislative interpretation of the law is entitled to much consideration.

Appeal from Saint Clair County Circuit Court.—*Hon. Chas. A. Calvird,* Judge.

AFFIRMED.

*J. C. Hargus* for appellant.

(1) Trespassing chickens and likewise cattle and horses could be restrained at common law and the owners thereof were liable in damages for the trespassing of same. 3 Blackstone Com., page 7.; 2 Cyc., page 402, note 73; State v. Neal, 120 N. C. 613, 27 S. E. 81, 58 Am. St. 810; McLean v. Berkabile, 123 Mo. App. 652; O'Riley v. Diss, 41 Mo. App. 188; Growney v. Railroad, 102 Mo. App. 446; Clark v. Keliher, 107 Mass. 409. (2) The court will take judicial notice of the

adoption of the common law in Missouri. Also see Sec. 8047, Revised Statutes 1909, page 2516. (3) The common law is the law of Missouri unless abrogated by statute. Sec. 6455, R. S. 1909, abrogates the common law so far as the animals named are concerned, to-wit: horses, cattle and swine. But this statute cannot be extended to include chickens. Canefox v. Crenshaw, 24 Mo. 203.

*John A. Gilbreath* for respondent.

(1) Sec. 8047, R. S. 1909, sets out what common law is in force in this State. (2) In this State the owner of land is not bound to keep his domestic animals upon his own premises or to fence them in but they are allowed free range and the owners do not become liable, in case they trespass upon the land of another and do damage. Owens v. Railroad, 58 Mo. 386; Schwartz v. Railroad, 58 Mo. 207; Hill v. Railroad, 121 Mo. 447; Turner v. Railroad, 78 Mo. 578, 581; Turner v. Railroad, 49 Mo. App. 520; Busby v. Railroad, 81 Mo. 43; Stien v. Railroad, 55 Mo. 33; Davis v. Railroad, 19 Mo. 425. (3) In this State domestic animals are commoners and have a right to run at large and the party who wishes to keep them off his premises must fence against them. Leach v. Lynch, 144 Mo. App. 395. (4) If the common law was in force and effect since 1816, in Missouri, as contended by appellant, why need the Legislature grant the power to cities to restrain chickens from running at large? Secs. 9229, 9374, R. S. 1909. (5) The passing of a law upon a subject not previously legislated upon, or an act giving new power or additional right has from time immemorial been denominated and accepted by the courts, and bar, and the public as a legislative construction that no law existed on the subject or that no such right and power was contained therein. Wyckoff v. Hotel, 24 Mo. App. 389; Potter's Dwarris on Statutes, page

73; Veneable v. Railroad, 112 Mo. 103; Hannibal v. Railroad, 30 Mo. 550; Pike v. Megown, 44 Mo. 491.

STURGIS, J.—This is a suit for damages resulting from trespassing chickens. The plaintiff is a farmer and adjacent landowner to the defendants who owned the chickens which have trespassed on plaintiff's land and damaged his garden and growing crops. The trial court sustained a demurrer to the petition and the sole question is as to defendants' liability for damages so occasioned. The real question is whether under the law of this State, in the absence of any express statute on the subject, the owner of domestic fowls must so restrain them as to prevent their trespassing on the land of another or must such other landowner protect his land against such trespass or suffer the incidental injury without redress.

We have been fully impressed with the gravity of the question at issue by the assertion on one side and the tacit admission on the other that Missouri is the greatest poultry State in the Union and that the products of this industry for three years would be of sufficient value to pay for building the Panama Canal. For the purposes of this case we accept, without verifying, the truth of this statement. Though thus impressed with the importance of this cause, our diligence has not been rewarded with finding a case in point in this State nor in any other State, except our neighbor and rival on the north as will be later noted.

It is asserted that under the common law of England, adopted in this State at an early date, domestic animals, including fowls, are required to be restrained by the owner from running at large. Contra, it is said that only so much of the common law of England has been adopted as is of a general nature and not local to that kingdom. [Section 8047, R. S. 1909.] So far as the common law requires the owner of domestic animals to restrain them from straying from his own

land to that of another to his damage is concerned, the
negative has all the authorities in its favor. It was
held at an early date in this State (Gorman v. Rail-
road, 26 Mo. l. c. 445), that: "It has always been the
understanding as to the law in this State that our
statute concerning inclosures entirely abrogated that
principle of the common law which exempted the pro-
prietor of land from the obligation of fencing it, and
imposed on the owner of animals the duty of confin-
ing them to his own premises. No conviction has more
thoroughly occupied the public mind than this, and
nothing would sooner arouse the attention of the com-
munity than an apprehension that the old rule of the
common law was to any extent to be revived." And in
McPheeters v. Hannibal & St. J. R. R. Co., 45 Mo.
l. c. 26, the court, speaking on this point, said: "But
such is not, and never was, the common law in Mis-
souri. It is opposed to the policy of the State in its
present condition, and whenever it has been attempted
to be enforced, it has met with resistance and condem-
nation." As to damages caused by trespassing ani-
mals the law is: "In this State the owner of land is
not bound to keep his domestic animals upon his premi-
ses or to fence them in, but they are allowed what is
called a 'free range,' and he does not become a tres-
passer from the fact that they stray upon the unfenced
lands of another proprietor." [Hill v. Railroad, 49
Mo. App. l. c. 533.] There are innumerable cases as-
serting this to be the law and if this case was one for
damages arising from cattle, horses, hogs or such ani-
mals, trespassing on plaintiff's crops, in the absence
of his having a lawful fence, the law is plain that he
cannot recover. This court, in the case of Leach v.
Lynch, 144 Mo. App. 391, 394, 128 S. W. 795, had oc-
casion to determine that a goat is of the class of domes-
tic animals which are commoners and have a right to
run at large and a party wishing to keep them off his
premises must fence against them. In Canefox v.

Crenshaw, 24 Mo. 199, the duty to fence one's own premises against domestic animals rather than require the owner to fence them in is fully recognized, but is held not to apply to an animal *ferae naturae,* as a buffalo.

While chickens and like domestic fowls are not animals in the usual acceptance of that term, yet granting that they are included by the common law with domestic animals as among the living creatures which are to be restrained by the owner from running at large (Clark v. Keliher, 107 Mass. l. c. 409), by analogy of reasoning, if the common law in this respect has never been in force in this State as to domestic animals, neither has it been in force as to domestic fowls, being opposed, as said by Judge WAGNER in McPheeters v. Hannibal & St. J. R. R. Co., 45 Mo. 22, to the policy of this State, or, as said in McLean v. Berkabile, 123 Mo. App. l. c. 652, 100 S. W. 1109: "In this State at a time in its early history when there was much unoccupied and uninclosed land, this rule was deemed by the Supreme Court to be unsuited to the needs of a sparsely settled country and in its construction of legislation relating to the subject the court held that domestic animals should be allowed to range at will over uninclosed lands and compelled the owners of cultivated fields to fence against such animals if they would escape their depredations."

It is a circumstance, not without much weight, that while it is common knowledge that chickens have been allowed to run at large for years, and, as respondent aptly says, "The court will take judicial notice and knowledge that no law, rule of action or conduct has ever prevailed, in this State, concerning chickens, other than unbridled license, unrestrained liberty and free range, by universal consent, knowledge and acquiescence among the people from time immemorial," yet, no suit of this character has ever been before the courts. [Ewing v. Vernon County, 216 Mo. 681, 689, 116 S. W.

518; Venable v. Railway Co., 112 Mo. 103, 125, 20 S. W. 493.] What Judge SCOTT said in Riddick v. Walsh, 15 Mo. l. c. 537, is applicable here: "It is a circumstance not without its influence, in the determination of this question, that no case can be found in our books of reports in which this claim is asserted, much less maintained, although the period of forty-four years has elapsed since it might have been done." To add force and local application to this statement of the law we are indebted to respondent for this forceful remark, after showing that the common law was adopted in this State on January 19, 1816: "From the last named date to May 26, 1914, a period of time covering ninety-eight years, four months and seven days, the people of Missouri have lived and died in ignorance of the law, that is, that the common law of England concerning the running at large of 'chickens' was actually in full force and effect in Missouri; and such important fact and such knowledge of the existence of the law was not discovered until May 26, 1914, until Ed. and Anna McLalin's chickens trespassed upon the garden, potato patch and wheat field of Bob Evans on the banks of the Sac River, near Cobb, in St. Clair county, Missouri."

We are also impressed with the fact that the legislative branch of our State government has always understood that the common law is not in force in this State as to requiring the owners to restrain domestic fowls from running at large. Thus many years ago statutes were enacted and have remained in force specially authorizing cities and towns to prohibit such fowls, or certain species thereof, from running at large. [See sections 9229 and 9374, R. S. 1909.] In 1891 the Legislature enacted what is now section 790, Revised Statutes 1909, providing for the owner of domestic *geese,* where the stock law has been adopted, restraining them on his premises "the same as all other animals." *Expressio unius est exclusio alterius.* It is

evident that if the general law requires and always has required such restraint, then such statutes were and are useless. A legislative interpretation of the law is entitled to much consideration. [Pike v. Megoun, 44 Mo. 491, 494; Hannibal & St. J. R. R. Co. v. Shacklett, 30 Mo. 550, 560; St. Louis & S. F. Ry. Co. v. Evans & Howard Brick Co., 85 Mo. 307, 332; Ross v. Railroad, 111 Mo. 18, 25, 19 S. W. 541; Wyckoff v. Southern Hotel Co., 24 Mo. App. 382, 389.]

This same question, under laws similar to ours, was considered and much light thrown thereon by the Supreme Court of Iowa in Kimple v. Schafer, 143 N. W. 505, and the result reached that the rule of the common law requiring an owner to keep and restrain domestic animals upon his own premises is inapplicable to the habits and conditions of the people in Iowa and that same is true as to chickens. The common law in this respect had been adopted in Iowa the same as here, but it is shown by the many citations that practically all the States (the original Colonies perhaps excepted), as well as the Supreme Court of the United States in Buford v. Houtz, 133 U. S. 320, 33 L. Ed. 618, have held that the common law of England in this respect is not applicable to our conditions and therefore not in force. The fact that the Legislature of Iowa had passed certain statutes providing for restraining domestic animals in cities and towns was noted and the court then added: ''These provisions of the Code are significant in that the only attempt made by the Legislature to regulate the running at large of poultry, turkeys, chickens, ducks, geese, guinea hens, or other fowls coming under that designation, refers only to cities or towns, thus indicating that in the country districts such animals are free commoners, and he who would be protected from their ravages must fence or protect his land against them. We should not shut our eyes to the fact that from the very beginning of the State, even in its territorial stage, chickens have been what may prop-

erly be described as free commoners. Save for purposes of breeding, it has never been the custom in rural districts for the owner to restrain his chickens. . . . It is very much easier to fence poultry out than it is to fence it in, and until the Legislature makes it obligatory upon the owner to restrain his chickens, turkeys, ducks, geese, peacocks, and guinea hens and keep them from running at large, we are not disposed to adopt a rule which will require him to do so. The customs and habits of our people, with reference to the care of poultry, are so well established and so thoroughly understood that we think all would be shocked, to say the least, by a pronouncement from this court that they must fence them in.''

The cases of O'Riley v. Diss, 41 Mo. App. 184, and Growney v. Railroad, 102 Mo. App. 442, 76 S. W. 671, and like cases, have been noticed by us in considering this case. Those cases are not applicable however as they deal with the relation and duties of adjacent landowners to each other who have by agreement joined outside lawful fences and where each such landowner relies for protection to his land on the common fence inclosing his and his neighbor's land. [Demetz v. Benton, 35 Mo. App. 559, 565.] The Legislature has never defined a lawful fence as regards chickens or domestic fowls. On this record neither party had erected any fence or barrier as a protection against chickens and we need not discuss what would or would not be sufficient in that respect.

The result is that the judgment of the trial court is affirmed.

*Robertson, P. J.,* and *Farrington, J.,* concur.