Marilyn Mae WEBER and Wayne Weber, wife and husband, Appellants,

v.

Nicholas Clark MADISON, Jr., as Executor of the Estate of Stanton W. Madison, Deceased, Appellee.

No. 2–57893.

Supreme Court of Iowa.

March 16, 1977.

Edward J. Gallagher, Jr., of Keith, Gallagher, Lybbert, Martin & Burk, Waterloo, for appellants.

Donald L. Hoeger, of Greif, Klotzbach & Hoeger, Independence, for appellee.

Submitted to MOORE, C. J., and MASON, REYNOLDSON, HARRIS and McCORMICK, JJ.

REYNOLDSON, Justice.

This appeal requires us to examine the status of geese as "free commoners", a subject this court last considered 63 years ago.

The petition alleges plaintiff Marilyn Mae Weber was driving an auto on a gravel road in Buchanan County. As she was coming out of a curve a flock of "large geese" owned by defendant's decedent came upon the highway. Attempting to avoid collision with the geese, she went into a roadside

ditch and was severely injured. Plaintiff Wayne Weber, husband of the plaintiff driver, brings action for loss of consortium in a separate division. References to plaintiff in the balance of this opinion will be to the driver.

Plaintiff's petition alleged the owner of the geese negligently failed to restrain the flock in violation of his common-law duty to do so, negligently allowed the flock to be upon the graveled road, negligently failed to warn those using the road, including plaintiff, of the presence of the geese on the road, and negligently failed to restrain the geese in violation of § 188.2, The Code, 1973.

Defendant's motion to dismiss asserted there was no legal obligation requiring an owner to restrain geese from running at large, the common law does not require geese to be restrained from going on the gravel roadway, the petition contained no allegations defendant's decedent knew or should have known that the geese were or ever had been on the roadway, plaintiff failed to allege facts showing a duty to warn of the geese on the road, and § 188.2, The Code, 1973, does not apply to geese.

Trial court sustained the motion to dismiss on the ground "there is no obligation under the law, common law or by statute, to restrain geese from running at large."

Appealing, plaintiff contends owners of geese may be found negligent in failing to use reasonable care to restrain geese so as to prevent creation of a dangerous road hazard. We agree.

### I. Scope of review.

■■ Overruling or sustaining a motion to dismiss does not depend upon trial court's discretion. It must rest on legal grounds and is subject to review by this court. *Board of Supervisors v. Standard Appliance Co.*, 249 Iowa 438, 440, 87 N.W.2d 459, 461 (1958).

■ A motion to dismiss is a waiver of any ambiguity or uncertainty in the pleadings. *Bigelow v. Williams*, 193 N.W.2d 521, 524 (Iowa 1972). Such a motion grounded

on failure to state a cause of action is sustainable only when it appears to a certainty the pleader has failed to state a claim upon which any relief may be granted under any state of facts which could be proved in support of the claim asserted. In making this determination the pleading should be construed in the light most favorable to the pleader with doubts resolved in his favor and the challenged allegations accepted as true. *Murphy v. First Nat. Bank of Chicago*, 228 N.W.2d 372, 375 (Iowa 1975); see *Symmonds v. Chicago, M., St. P. & P. R. Co.*, 242 N.W.2d 262, 263 (Iowa 1976).

We approach our review of trial court's ruling with these principles in mind.

### II. Issue of statutory obligation.

While we do not deem it controlling, we are satisfied trial court was right in determining there was no statutory duty to restrain geese.

Plaintiff relies on the following statute:

"188.2 *Restraint of animals.* All animals shall be restrained by the owners thereof from running at large."

The term "animals" as used in this section is not used in its normally broad sense. It is defined in § 188.1(3):

" 'Animal' or 'animals' when used in this chapter shall include and embrace horses, cattle, swine, sheep, goats, mules, and asses."

This language was adopted in 1924 (40 Ex. G.A., H.F. 71 § 1) supplanting § 2311, The Code, 1897, which included the definition " 'stock' means cattle, horses, mules and asses * * *." A historical review of our statutes and case law is found in *Wenndt v. Latare*, 200 N.W.2d 862 (Iowa 1972).

Plaintiff argues the legislature intended the words "include and embrace" to be words of enlargement, thereby extending the definition to geese and other domestic fowl.

We have examined this contention in light of the statutory construction rule of *ejusdem generis*, *Federated Mutual Imp. & H. Ins. Co. v. Dunkelberger*, 172 N.W.2d

137, 140 (Iowa 1969); 2A Sutherland, Statutory Construction § 47.18, at 109 (4th ed. Sands 1973), and the language of § 368.7(5), The Code, 1973 (now repealed, see § 364.1, The Code, 1975) by which the legislature empowered cities to enact ordinances to prohibit animals *and fowl* from running at large.

■ We have concluded the 1924 legislature in enacting § 188.1(3) coupled with § 188.2 did not intend its prohibition to include fowl.

### III. *Application of tort principles.*

■ In this tort action grounded on negligence we also view the pleaded circumstances and implications necessarily inferred therefrom in light of ordinary tort principles. Defendant's assertions that there is no statutory or common-law "duty" governing the presence of these geese on the roadway should not becloud an analytical overview of the parties' respective rights. Appropriate here is what we said in *Wittrup v. Chicago & Northwestern Ry. Co.*, 226 N.W.2d 822, 823–824 (Iowa 1975):

"In absence of a statutory obligation, to state there is or is not a duty is merely to state a result, a conclusion that plaintiff's interests are or are not entitled to legal protection against defendant's action or lack thereof. *MacLean v. Parkwood, Inc.*, 247 F.Supp. 188, 191 (D.N.H. 1965), affirmed 354 F.2d 770 (1 Cir. 1966).

'It is better to reserve "duty" for the problem of the *relation between individuals* which imposes upon one a legal obligation for the benefit of the other * *. In other words, "duty" is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in the light of the apparent risk.

'* * * It is a shorthand statement of a conclusion, rather than an aid to analysis itself. * * * [I]t should be recognized that "duty" is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' (Emphasis added.)

—Prosser, The Law of Torts § 53, pp. 324–26.

See also 2 Harper and James, The Law of Torts § 18.8, pp. 1058–61 ('Another and sounder objection to the duty analysis is that it is unnecessary and simply duplicates the inquiry into negligence.' Id. p. 1060).

In short, there is a place in our negligence law for a designation of duty: as a statutorily imposed obligation or as a label to signify a relationship between the parties, e. g., owner-licensee, carrier-passenger, manufacturer-consumer, employer-employee, in which the law recognizes a potential liability for harmful conduct. But as a label it carries with it no combination to unlock this issue: whether, applying logic, sound reason, and enlightened public policy, this railroad should be immune from liability to plaintiff, if it failed to act in a situation clearly entailing foreseeable harm or damage to plaintiff and others driving through the underpass."

■ The asserted right to permit geese to run at large must be examined in light of the common-law obligation of every person to use that reasonable care under the circumstances to avoid injury to another which an ordinarily prudent person would exercise in a like situation. *Symmonds v. Chicago, M., St. P. & P. R. Co.*, 242 N.W.2d 262, 264 (Iowa 1976) ("We have always recognized the rule that negligence may be predicated upon a statute violation or upon the common law rule of 'ordinary care under the circumstances.' It may be based upon acts of commission or omission."); *Lindquist v. Des Moines Union Ry. Co.*, 239 Iowa 356, 360, 30 N.W.2d 120, 122 (1947); *Shatto v. Grabin*, 233 Iowa 46, 50, 6 N.W.2d 149, 151 (1942).

### IV. *Liability under common law.*

Applying this common law, we first examine the respective rights of the parties. Defendant's decedent's premises abutted a

secondary road. Plaintiff was a traveler on the road.

In *Stewart v. Wild*, 196 Iowa 678, 683, 195 N.W. 266, 269 (1923), a case involving hogs on a highway, we articulated this well-recognized rule:

"It is the fundamental law of the highway that it is subject to the use of the traveling public, and that it must be kept free from such obstructions as are not incident to its use for travel. Whatever endangers travel thereon, and whatever is not incident to the lawful use or care of the highway, becomes, ordinarily, a nuisance and a public peril."

See *Hawkeye-Security Ins. Co. v. Lowe Construction Co.*, 251 Iowa 27, 30, 37, 99 N.W.2d 421, 424, 428 (1959) (negligently dropping dirt, clay and mud on traveled portion of highway); *Kehm v. Dilts*, 222 Iowa 826, 827, 270 N.W. 388, 389 (1936) (leaving 5 to 8 inch hump in the highway).

While an abutting landowner is not liable with respect to highway hazards over which he has no control, he is under an obligation to use reasonable care to keep his premises in such condition as not to create hazards in the adjoining highway. 60 C.J.S. Motor Vehicles § 203, at 1029 (1969). He must conduct operations on his land in such a manner as not to injure the highway traveler. 65 C.J.S. Negligence § 63(144), at 930–931 (1966). He may be subject to liability for physical harm caused by an excavation or other artificial condition on his land which is so near an existing highway that he realizes or should realize it involves an unreasonable risk to highway travelers using reasonable care. Restatement (Second) of Torts § 368, at 268 (1965).

The thrust of these related principles manifests the strong public policy that highways must be free from obstructions and hazards. Ordinarily the liability of one who causes such a hazard, defect or obstruction rests on the general law of negligence. 60 C.J.S. Motor Vehicles § 205, at 1033–1034 (1969); see Annot., Animal in Highway—Injury to Vehicle, 59 A.L.R.2d 1328, 1343 (1958).

But defendant's position is that this flock of "large geese" had a right to be in the road by virtue of their "free commoner" status, citing a 1913 decision of this court, *Kimple v. Schafer*, 161 Iowa 659, 143 N.W. 505. He therefore asserts plaintiff had no cause of action against him.

*Kimple* was an action by a landowner to compel defendants, whose premises were across a road, to restrain their chickens from trespassing upon plaintiff's land. In holding an injunction would not lie, the Iowa Supreme Court evidenced a pragmatic concern for the chicken industry and remarkable sensitivity to the health problems of fowl:

"We should not shut our eyes to the fact that from the very beginning of the state, even in its territorial stage, chickens have been what may properly be described as free commoners. Save for purposes of breeding, it has never been the custom in rural districts for the owner to restrain his chickens. They, with turkeys, geese, and ducks, have been permitted to roam at will, and such practice is vital to the life and health of such animals. Unless permitted, the expense of building fences to prevent their escape would be well-nigh ruinous of the industry."

—161 Iowa at 663–664, 143 N.W. at 507. Included in the court's rationale was the puzzling observation that "It is very much easier to fence poultry out than it is to fence it in * * *." *Id.*

A "commoner" in the old English law was a person having a right of *common*. Such persons had a right "to pasture on the waste, in common with the lord." Black's Law Dictionary 347 (rev. 4th ed. 1968). In 1856 this court, declaring cattle to be "free commoners", quoted from an Illinois decision, *Seely v. Peters*, 5 Gilm. 130: "Settlers have located themselves contiguous to prairies, for the very purpose of getting the benefit of the range. The right of all to pasture their cattle upon uninclosed ground, is universally conceded." *Wagner v. Bissell*, 3 Iowa 396, 405. See *Hansen v. Kem-*

*mish*, 201 Iowa 1008, 1014, 208 N.W. 277, 280 (1926).

But as the English common law developed, the keeper of animals of a kind likely to roam and do damage, including fowl, was strictly liable for their trespasses. This rule was adopted in most jurisdictions. Prosser, Law of Torts § 76, at 496–497 (4th ed. 1971). However, it was rejected in *Kimple* as not applicable to the customs of this state. *Kimple* was followed in a Missouri case in 1915, *Evans v. McLalin*, 189 Mo.App. 310, 175 S.W. 294. The Missouri court observed it was "fully impressed" by the fact Missouri was the greatest poultry state in the union, products of its industry for three years being of enough value to pay for the Panama canal.

After 63 years we find it necessary to reconsider the "free commoner" rights of geese, at least insofar as that status may be asserted as a right superior to the right of unobstructed travel by one legally using a public highway.

■ It is of course readily apparent, and we judicially note, free-ranging fowl are no longer a major factor in our agricultural economy. In large part, poultry production has been taken over by big business. See *Patz v. Farmegg Products, Inc.*, 196 N.W.2d 557, 560 (Iowa 1972) (400,000 laying hens in confinement); *Farmegg Products, Inc. v. Humboldt County*, 190 N.W.2d 454 (Iowa 1971) (40,000 chickens in each of two 40 by 400 foot steel buildings).

At the same time, there has been a revolution in our transportation. Some of this change was already apparent in 1923 when we said in *Stewart v. Wild*, 196 Iowa at 683–684, 195 N.W. at 269:

"In the days of the ox-drawn vehicle, it may be conceded that the presence of a hog upon the highway would not present an imminent danger of a collision with the vehicle. In the later day of swifter moving horse-drawn vehicle, the presence of a hog at large became an increased danger, though more readily avoidable than in the still later day of the motor vehicle. In these days of general travel by motor vehicle, we see no room for

saying, as a matter of law, that the presence of a hog at large upon the highway does not suggest danger of collision with traveling vehicles."

A similar accommodation to changing conditions is found in *Templeton v. Crull*, 16 Wis.2d 416, 420, 114 N.W.2d 843, 845 (1962):

"If, in 1926, there were policy reasons for holding that one who negligently permitted his animals to be at large on the highway could not be liable for damages resulting from a collision with an automobile, we do not find such reasons valid under traffic and highway conditions today."

See also *Ritchie v. Schaefer*, 254 Iowa 1107, 1109–1110, 120 N.W.2d 444, 446 (1963).

The tendency of modern decisions is to restore the old common-law rule imposing liability with respect to all free-ranging animals. Prosser, Law of Torts § 76, at 497 (4th ed. 1971). "[I]n numerous cases the owner of the animal has been charged with negligence generally, merely because he had permitted the animals to run at large." 4 Am.Jur.2d Animals § 114, at 365 (1962).

A flock of large geese on the highway obviously presents a more dangerous hazard to today's fast-moving vehicles with underslung chassis and minimal fender clearance. The well-established "customs and habits of our people, with reference to the care of poultry" we noted in *Kimple*, 161 Iowa 664, 143 N.W. 507, have largely gone the way of the model T Ford.

■ We hold neither the "free commoner" status of geese nor the failure of the legislature to statutorily prohibit the owner from permitting geese to run at large will excuse an owner from negligently permitting them to be unattended on a traveled highway if their presence there creates a hazard to the motoring public.

■ As there is no applicable prohibitory statute, the fact the geese were on the roadway will not constitute prima facie evidence of negligence. See *Wenndt v. Latare*, 200 N.W.2d at 868; *Leaders v. Dreher*, 169 N.W.2d 570, 573 (Iowa 1969). Plaintiff

will be obligated to prove the negligence she alleges. In our view the allegation defendant's decedent negligently failed to warn of the presence of the geese on the road is sufficient, when attacked by a motion to dismiss, to allege by necessary implication the owner had actual or constructive knowledge of the danger. *Robinson Min. Co. v. Tolbert*, 132 Ala. 462, 31 So. 519 (1901); see 65A C.J.S. Negligence § 186(7), at 341 (1966).

The motion to dismiss should not have been sustained. We reverse and remand for further proceedings in conformance herewith.

REVERSED AND REMANDED.